# THE CHICAGO CITY RAILWAY COMPANY

## v.

## BENJAMIN MUMFORD.

*Filed at Ottawa February 3, 1881—Rehearing denied March Term, 1881.*

1. NEGLIGENCE—*starting street car suddenly as passenger is getting off.* Where a person on a street car told the driver the place where he desired to get off, and was notified by the driver that they had reached that place, and, when he was in the act of stepping off, the car started up with a sudden jerk, which threw him upon the ground, inflicting a serious injury, it was *held* that this was a clear act of negligence on the part of the railway company ; that it was the duty of the company to have stopped the car a sufficient time to allow the passenger to step off, and that even if the car was stopped at the proper place, it was negligence to start it with a sudden jerk, without the exercise of any precaution for the safety of those attempting to get off.

2. In an action against a street railway company to recover damages for a personal injury received in attempting to alight from a car, the defendant asked the court to instruct the jury to find for the defendant, if they found that the plaintiff, while the car was still in motion, without ringing the bell, and without notice to the driver of his intention, alighted from the car, and, in so doing, was thrown to the ground by a jerk of the car, and was so injured: *Held,* that the instruction was bad and properly refused, as the motion of the car might have been barely perceptible, in which case the driver would have no right to start the car by a sudden jerk without looking to see if passengers were in the act of alighting or not, and that the act of the plaintiff in such case could not be regarded as negligence.

3. When the driver of a street car had been notified that a passenger desired to get off at a certain house on the street, and had agreed to stop the car at such a place, an instruction that if the passenger, when near the place named, undertook to get off the car while it was going slowly, the driver having no notice of his intention, he could not recover for a personal injury, although the car started forward as he was stepping off, which threw him to the ground, was *held* properly refused, as being calculated to mislead the jury.

4. PRACTICE—*exception to refusing an instruction as asked, does not apply to a modification.* Where a party excepts to a refusal to give an instruction as asked, but not to the giving of the same as modified, and the ruling of the court is not urged as a ground for a new trial, nor assigned for error in the Appellate Court, the only question before this court will be, whether the trial court erred in refusing the instruction as asked.

Appeal from the Superior Court of Cook county; the Hon. John A. Jameson, Judge, presiding.

This was an action on the case, brought by Benjamin Mumford against the Chicago City Railway Co. to recover damages for a personal injury resulting from the negligence of the company.

On the second trial of the case, the jury found for the plaintiff, and assessed his damages at $8,000. The plaintiff entered a remittitur of $3,000. A motion for a new trial was overruled, and judgment entered against the defendant for $5,000.

Messrs. Hitchcock, Dupee & Judah, for the appellant:

Any negligence, however slight, on the part of the injured person, if proximate or *materially* contributing to the injury, will prevent a recovery. *Potter* v. *Chicago & Northwestern R. R. Co.* 21 Wis. 377; *Chicago & Alton R. R. Co.* v. *Gretzner,* 46 Ill. 74.

And, therefore, the third instruction for the appellee required the jury to find, not only that his negligence was slight, but not the proximate cause of the injury, in order to justify a recovery.

Even riding on the steps of a street car, when there is room inside, is negligence. *Clark* v. *Eighth Avenue R. R. Co.*, 36 N. Y. 135.

It has been repeatedly held, in this State, that it is negligence to alight from a steam car when in motion. The question has never arisen in regard to a horse-car. The danger is, however, very much the same, and has led to such notices as were posted in the car on which the appellee was injured. Every person knows the danger, and never alights without special guards against the risk. *Ohio & Miss. R. R. Co.* v. *Stratton,* 78 Ill. 88; *Illinois Central R. R. Co.* v. *Slatton,* 54 id. 133; *Chicago & Alton R. R. Co,* v. *Randolph,* 53 id. 510.

The question of negligence was a mixed one of law and fact, and it was the duty of the court to instruct the jury whether the facts which the testimony tended to prove, would, if found true, constitute that negligence which would defeat the action. *Trow* v. *Vermont Central R. R.*, 24 Vt. 487; *Filer* v. *The New York Central R. R. Co.*, 49 N. Y. 47.

The court also erred in modifying appellee's third and fourth instructions.

That the damages were excessive, counsel cited: *City of Chicago* v. *Brophy*, 79 Ill 277; *Chicago & Alton R. R. Co.* v. *Wilson*, 63 id. 167; *Chicago & Alton R. R. Co.* v. *Murray*, 71 id. 601.

Messrs. PECKHAM & BROWN, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action on the case, brought by Benjamin Mumford, against the Chicago City Railway Company—a corporation operating street cars in the city of Chicago—to recover damages for a personal injury, received while in the act of getting off the car of the defendant near the Palmer House, in Chicago. On the trial of the cause in the circuit court, the plaintiff obtained a judgment, which the railway company seeks to reverse, first, on the ground that the plaintiff failed to show that he was free from negligence which contributed to the injury. Second, that the court erred in refusing defendant's third and fourth instructions. Third, that the damages are excessive.

It is an undisputed fact, that the plaintiff notified the driver who was in charge of the car, soon after he went in the car, that he desired to stop at the Palmer House, and that the driver promised to stop and let him off at that place, but whether the accident occurred from the negligence of the driver, or through the negligence of the plaintiff, there is some conflict in the evidence; but, upon that question, the

jury found for the plaintiff, and we are not prepared to say the finding was unauthorized.

The plaintiff, in substance, testified that when they came near the Palmer House the driver notified him, by a gesture, that they had reached the place to get off. He then said, " I immediately got up, went to the door, and finding the car going faster than it was safe for me to get out, I rode on the car until I thought it was perfectly safe to step off. We were then very near to the door of the Palmer House, and I intended to have stepped on my right foot, and I had hold of the iron (iron railing) with my left hand, and when I got my foot near the ground, I don't know but it may have been touching, there was a sudden jerk ahead, and I was thrown, I should think, my length, or more, on the ground by the jerk." The plaintiff is confirmed in his evidence in regard to the fact that the conductor notified him that they had reached the place to get off, and also in regard to the fact that he was thrown upon the ground by a sudden jerk of the car, by two other witnesses who were in the car at the time. F. E. Day, who was a passenger at the same time, testified that "the driver said, ‘here is your place;’ he spoke to some one in the car and looked at the man, and pointed with his hand to the Palmer House, and the plaintiff got up and walked out of the door, the car going slow; he had his head down, his feet went down on the ground, when the car gave a jerk up and slung him off." The other witness who was on the car at the time, does not, in any material respect, differ in his statement of the occurrence from the witness Day. If the evidence of the plaintiff, and the two witnesses called by him, is worthy of credit, it is apparent that the injury which the plaintiff received is to be attributed to the negligence of the company.

From this evidence, it appears that the plaintiff was notified by the person in charge of the car that they had reached the place for him to get off, and when he was in the act of stepping off, the car started up with a sudden jerk and he was

thrown upon the ground. It was the duty of the defendant to stop the car a sufficient time to allow the plaintiff an opportunity to step off, and it was a clear act of negligence for the company to start up with a "jerk" when the plaintiff was in the act of stepping off.

It is true, the driver on the car denies that he notified the plaintiff, by gesture or otherwise, to get off, and says he came to a complete stop opposite the Palmer House and looked in the car and saw that plaintiff was gone. In regard to the fact that the car was stopped opposite the entrance of the Palmer House, he is corroborated by a driver on another car which was following the one from which plaintiff was thrown, and he thinks that plaintiff fell from the car before it stopped. The jury, however, saw all the witnesses and heard them testify on the stand, and it was for them to determine whether the evidence of the car drivers was entitled to as much, or more, credit than the evidence of the other witnesses who saw the accident. The jury, being judges of the credibility of the witnesses, had the right to disregard the statements of the drivers, when they were in direct conflict with the evidence of other witnesses more credible, and accept the testimony of these other witnesses as true. Where that has been done we can not interfere with the verdict. If, however, it be true that the car stopped opposite the entrance to the Palmer House, as stated by the car driver, it by no means follows that the company was free from negligence.

From the evidence, it is probable that the car did stop,—but this did not relieve the car driver from further care for the safety of passengers. It was his business to know, before he started up, whether passengers were in a position to be injured, and it can not be regarded otherwise than an act of negligence, to start the car with a " sudden jerk" without the exercise of any precaution for the safety of those who might be getting off or on the car; and none seems to have been exercised.

It is next urged, that the court erred in refusing instructions Nos. 3 and 4. They are as follows:

"3. If the jury believe, from the evidence, that the plaintiff notified the driver that he desired to get off at the Palmer House, the driver was justified therefrom in supposing he wished to get off opposite the entrance of the house; and if they further believe, from the evidence, that while the car was still in motion, without ringing the bell and without any notice to the driver of his intention so to do, the plaintiff alighted from the car, and in so doing was thrown to the ground by a jerk of the car, and so sustained the injuries complained of, they will find for the defendant."

"4. If the jury believe, from the evidence, that the plaintiff, being a passenger on the car of the defendant, requested the driver to let him off at the Palmer House; that the driver, at or near the only entrance of said house on State street, looked in said car and found that the plaintiff was not upon the car; that the plaintiff had given the driver no notice of his desire or intention to get out of the car at an earlier place than at said entrance, and that the driver had no knowledge of any intention or attempt of the plaintiff so to do; and if they further believe, from the evidence, that the plaintiff, finding himself near the Palmer House, and that the car was going slowly, undertook to get off the car before it stopped, supposing he could succeed in doing so safely, and that just as he was stepping off the car started forward, the driver having no notice of the intention or position of the plaintiff, and no reason to know of the same, then they will find for defendant."

The court refused to give the instructions as asked, but modified the 3d by inserting after the word car, in the 8th line, "without the knowledge or direction of the driver," and, in the 8th line, inserted after the word car, "without any fault or negligence of the driver."

The court also modified the 4th by inserting the same words after the word undertook in the 12th line, and after the word forward in the 15th line, and then gave the instructions to the jury as modified.

The defendant excepted to the decision of the court in refusing to give the instructions as asked, but did not except to the giving of the instructions as modified, nor was that decision of the court urged as ground for a new trial, or assigned for error in the Appellate Court. The question, then, presented by this record is, whether the court erred in refusing the instructions as asked.

We will first examine the third instruction. By this instruction the jury was directed to find for the defendant if they found, that while the car was still in motion, without ringing the bell, and without notice to the driver of his intention, the plaintiff alighted from the car, and in so doing was thrown to the ground by a jerk of the car, and so sustained the injuries.

If all the facts stated in the instruction were found to be true by the jury, it would not necessarily follow that they should find for the defendant. If the motion of the car was barely perceptible, it would be in motion. And, suppose it was barely moving when it reached the Palmer House, and, while in this condition, plaintiff attempted to step off, but, at that moment, the driver started the car with a "sudden jerk," without looking to see whether passengers were in the act of alighting or not, could the acts of the plaintiff, under such circumstances, be regarded so negligent that he could not recover? We think not. If, however, the instruction had been given, the jury could not have done otherwise than find for defendant.

The 4th instruction, although artfully drawn, was calculated to mislead the jury, and for this reason we are of opinion the court properly refused to give it to the jury as it was originally prepared.

It is a fact, in regard to which there is no dispute, that the plaintiff desired to get off the car at the Palmer House, and the driver had been notified of this fact and had agreed to stop the car and let the plaintiff off at this place.

The instruction, with these facts before the jury, in substance directed them, that if plaintiff, when near the Palmer House, undertook to get off the car while it was going slowly, the driver having no notice of his intention, he could not recover, although the car started forward just as he was stepping off. Had the instruction said that plaintiff, before he reached the Palmer House, or before he was opposite the entrance, without notice to the driver, and while the car was moving at its usual rate of speed, undertook to get off, etc., it might have been sustained, but its language and meaning are entirely different. When the plaintiff was opposite the entrance to the Palmer House, he was *near* the Palmer House, and if, when opposite the entrance, he undertook to get off, the car being barely in motion, or, as stated in the instruction, which may mean the same thing,—going slowly,—and as he was in the act of stepping off, the car started forward, and he was thrown to the ground and injured, he might recover,—but had the instruction been given he could not.

We are of opinion that the instruction was calculated to mislead the jury, and the court did not err in refusing it.

It is also claimed that the damages are excessive. It appears from the evidence that the injury received was serious and permanent. The thigh bone was fractured, which rendered the plaintiff a cripple for life. Besides, he was otherwise injured.

It is true the damages are high, but we do not regard the amount of the judgment so excessive as to justify a reversal on the ground, alone, of excessive damages.

After a careful examination of the whole record, we are of opinion that no substantial error appears. The judgment will, therefore, be affirmed.

*Judgment affirmed.*

Mr. CHIEF JUSTICE DICKEY: I think this judgment ought to be reversed for error in modifying the defendant's 3d instruction. In my judgment the refusal of the instruction as asked, and the giving of the instruction as modified, constitute but one ruling, and an exception taken to the refusal of the instruction as asked is, in substance, an exception to the whole ruling, embracing the erroneous modification.