The Indianapolis, Peru and Chicago Railway Company *v.* Bush.

Filed May 15, 1885.

---

No. 10,852.

THE INDIANAPOLIS, PERU AND CHICAGO RAILWAY COMPANY *v.* BUSH.

SPECIAL VERDICT.—*Venire de Novo.*—*Motion for New Trial.*—If a special verdict contain findings of evidence, conclusions of law and matters without the issues, such portions will be disregarded in rendering judgment, and a motion for a *venire de novo*, because of such portions of the verdict, will be overruled. If such verdict fail to find material facts proved, the remedy for such failure is by a motion for a new trial.

SAME.—*Negligence.*—*Province of Jury.*—*Conclusions of Law.*—In an action for

The Indianapolis, Peru and Chicago Railway Company *v.* Bush.

damages for an injury occasioned by negligence, a special verdict, after reciting facts, stated that the plaintiff was not guilty of contributory negligence, and that the injury was the result of negligence on the part of the defendant.

*Held*, that such findings as to negligence were conclusions of law which the jury could not make, and that they must be disregarded under a motion for a *venire de novo* assigning them as the ground thereof.

SAME.—*Instructions to Jury.*—Where the rendition of a special verdict is directed, there is no error in refusing to give general instructions as to the law of the case, though the statements in the instructions requested be correct as abstract propositions of law.

NEGLIGENCE.—*Measure of Damages.*—*Moral Character.*—In an action for damages for injury to the person through negligence, the moral character of the plaintiff is not relevant as an element in the measure of damages.

PRACTICE.—*Withdrawal of Erroneous Evidence.*—If before the close of the argument to the jury the court withdraw evidence erroneously admitted, and admonish the jury not to consider it, the error of its admission will be cured.

From the Marion Superior Court.

*T. A. Hendricks, C. Baker, O. B. Hord* and *A. W. Hendricks,* for appellant.

*L. Ritter, E. F. Ritter* and *B. W. Ritter,* for appellee.

ZOLLARS, C. J.—Appellee was injured by one of appellant's engines at a point where the railroad track crosses Liberty street, in the city of Indianapolis, and brought this action for the recovery of damages resulting from that injury. The action is based upon a charge of negligence.

The grounds of negligence specifically charged are, that, in violation of a city ordinance, appellant failed to have a watchman at the crossing to give him warning of the approaching engine; that in approaching the crossing he looked and listened for a warning from a flagman, and that no warning of any kind was given; that in violation of another ordinance, forbidding the moving of trains through the city at a greater rate of speed than four miles an hour, the engine was brought to and over the crossing, at the speed of eight miles an hour; that those in charge of the train negligently failed to sound

the whistle or ring the bell, or to give any other warning whatever of the approaching engine.

There is a general charge that the injury occurred by reason of the wrongful, reckless, negligent and unlawful acts of the defendant " aforesaid," and without fault of appellee in driving upon the crossing, or otherwise.

The jury returned a special verdict. At the proper time appellant, by counsel, moved for a *venire de novo* upon twelve different grounds stated. These grounds may be classified and epitomized as follows:

1st. The special verdict, in part, is a statement of evidence, instead of the facts.

2d. The verdict consists, in part, of conclusions of law.

3d. Facts are found which are not averred in the complaint.

4th. There is a failure to find important facts which were proven upon the trial.

It is well settled that it is the office of a special verdict to find the facts, and not the evidence or conclusions of law. *Locke* v. *Merchants' Nat'l Bank*, 66 Ind. 353; *Dixon* v. *Duke*, 85 Ind. 434; *Pittsburgh, etc., R. R. Co.* v. *Spencer*, 98 Ind. 186. And so, too, the verdict should be limited to the case as made by the pleadings, and should find all the facts proven under the issues; but it does not follow that if a special verdict should contain evidence, conclusions of law, fail to find facts proven, and find facts without the issue, a motion for a *venire de novo* must be sustained.

If a special verdict includes findings of evidence, conclusions of law, and matters without the issues, such findings will be disregarded in the determination and rendition of judgment.

If, stripped of these matters, the verdict is yet sufficient to lead to and support a judgment either way under the issues as made by the pleadings, a motion for a *venire de novo* will be overruled. Such a motion will not be sustained except where there is some defect, uncertainty or ambiguity upon

the face of the verdict, rendering it so defective that judgment can not be rendered upon it. *Heckelman* v. *Rupp*, 85 Ind. 286; *Henderson* v. *Dickey*, 76 Ind. 264; *Brickley* v. *Weghorn*, 71 Ind. 497; *Knox* v. *Trafalet*, 94 Ind. 346.

If the verdict fails to find any fact established by the evidence, finds facts without the issue, or not established by the evidence, the remedy is by motion for a new trial, assigning proper causes.

Upon the question of appellant's negligence, and the negligence of appellee, the special verdict is as follows:

The track of the Union Railway Company crossed Liberty street parallel with and near the track of appellant. For about two years prior to the accident and at that time those two companies, by an arrangement between them, had kept a flagman at the crossing, whose duty it was to keep himself in a proper position to warn approaching travellers upon the street of the approach of trains, and also to discharge the duties of switchman. The obstruction to a view of the track by approaching travellers was such as to make the crossing one of unusual danger. As the engine neared the street, the fireman, whose duty it was to ring the bell and keep a lookout for approaching travellers, left the engine on the side opposite from which appellee was approaching, and did not ring the bell. The engineer, whose duty it was also to keep a lookout as he approached the crossing, neglected that duty and was looking to the rear of the train. Before and at the time appellee approached the crossing, the flagman was away from his post of flagman, adjusting switches, and gave no warning at all to appellee of the approach of the train. No notice or warning of any kind was given to appellee of the approaching train, that he heard or saw, by appellant or any other person. Appellee was in an open buggy driving a horse in an ordinary trot as he approached the crossing. As he neared it, he looked and listened continuously from a point one hundred and seventy-five feet

The Indianapolis, Peru and Chicago Railway Company *v.* Bush.

from the railroad track for a warning from a watchman, the ringing of a bell, and other signals of an approaching train. Until the horse was within five feet of the track, the view of the train was entirely obstructed by buildings. He neither saw nor heard any signals of the approaching train until his horse was within five feet of the track, at which time the engine was within five feet of the horse. He then tried to stop the horse, but he, becoming frightened, sprang forward, and appellee, in attempting to jump from the buggy, fell and was run over by the engine.

His leg was so crushed that it had to be amputated between the hip and knee. At the time of the injury appellee was twenty-seven years old, and in vigorous health. At the close of the verdict are conclusions by the jury that appellee was not guilty of contributory negligence, and that the injury was the result of carelessness and negligence on the part of appellant. These conclusions are conclusions of law that the jury could not make, and hence must be disregarded in deciding as to the sufficiency of the verdict. *Pittsburgh, etc., R. R. Co.* v. *Spencer, supra.*

Whether or not sufficient facts are found in the verdict to support the judgment is another question, and a question which is not raised by the motion for a *venire de novo*. That motion was properly overruled.

Appellant asked a number of instructions which the court refused. The refusal was assigned as a cause for a new trial below, and is urged here as error.

In the first the court was asked to instruct the jury that the only acts of negligence averred were excessive speed of the train, want of a flagman at the crossing, the failure to ring the bell and sound the whistle, and that no other question as to negligence could arise in the case.

The substance of the third was, that no ordinance requiring a flagman at the crossing had been introduced in evidence, and that hence the company was under no legal obligation to keep one there.

The fourth was, in substance, that if the Union Railroad Company had kept a flagman at the crossing, and he had been employed by appellant merely to attend to its switches, he was not a flagman of appellant, and hence it was not responsible for his omissions.

The fifth was, that if the crossing was a dangerous one, more care was required on the part of appellee in approaching and going upon the crossing.

The sixth was, that the appellant was only bound to exercise ordinary care at the crossing to prevent injury to appellee.

The seventh was, that the mere fact that appellee was injured was not of itself sufficient to authorize the jury to impute negligence to appellant.

The eighth was, that if the engine, before the appellee passed to and upon the crossing, was standing a distance from the crossing, and the headlight thereof so shone upon the crossing that appellee could have seen it in time to have avoided the injury, he was guilty of negligence.

The ninth was, that if there was no evidence of the existence of an ordinance requiring a flagman, as averred in the complaint, the jury would not be justified in finding against appellant because of the absence of a flagman at the crossing.

It will be readily perceived that each and all of these instructions except the first were statements of the rules of law relating to the legal effect of certain evidence, the negligence of the parties, and the ultimate liability of appellant.

When the jury are to find a general verdict according to the evidence and the law, as they receive it from the court, the court must instruct as to the law, and instruct correctly. But in this case the jury were to find, not the law, but the facts simply, entirely independent of their legal bearings, and regardless of any consideration of liability on the part of any one. It was not a case, therefore, for general instructions as to the law of the case, and there was no error, therefore, in refusing such instructions.

As to whether or not the instructions were correct, as abstract propositions of law, we decide nothing. It would not have been an available error had the first instruction been given; neither can error be predicated upon its refusal.

Whether the instructions stated the averments of the complaint correctly or incorrectly, it is very apparent upon examination of the verdict that the refusal has been harmless to appellant.

No fault is found by appellant with the instruction of the trial court upon the question of the measure of damages, so far as it goes. There is a contention, however, that the court erred in refusing one of appellant's instructions, which added, as a further element for the consideration of the jury in fixing the damages, the character of appellee.

Moral character has nothing to do here with the measure of damages. A man of the worst character may be entitled to as much damages for an injury as a man of the highest character. There was, therefore, no error in refusing the instruction.

For the purpose of affecting the amount of damages, as counsel for appellant state, they sought to prove certain facts which, as they argue, would have tended to show that appellee had for a short time, in some way, been connected with a house of ill-fame. We do not perceive how such evidence could affect the amount of damages in this case, nor are we informed by counsel. Some of the offered evidence related to the house of appellee's aunt and to a date subsequent to the time when he lived in the house with her. The witnesses, by whom it was proposed to prove the character of the house, disclaimed all knowledge of appellee as connected with the house, or otherwise. Hence, if in any event such evidence might have been competent, it would have been necessary to establish the character of the house at the time appellee lived there, or in some way connect him with it. This appellant's counsel did not propose to do, nor did they assert their ability so to do, although informed by the court

that the evidence would be admitted if they would thus connect appellee with the house.

A man's character can not be ascertained, nor his reputation overthrown, by showing that a house in which he has once lived has become a house of prostitution. It should be observed, too, that no question is made that the damages are excessive. They are clearly not. And hence if there had been error in excluding the offered evidence, it was a harmless error.

Appellee was allowed to prove by one Beymer, who was in the buggy with him, that as they neared Liberty street and the crossing, he took the lines from Beymer saying, that "he was afraid of the crossing." Before the argument was closed, the court withdrew this evidence from the jury, and admonished them that they were not to consider it. This cured the error of its admission. *Zehner* v. *Kepler*, 16 Ind. 290. After the witness Beymer had testified that he was in the buggy with appellee, and that no signals of the approaching train were given, appellant's counsel passed him through a lengthy and searching cross-examination for the purpose of showing that he was intoxicated at the time of the collision. In the course of the cross-examination, questions were propounded as to whether appellee had been drinking on the afternoon and before the injury. Objections were sustained to these questions. There was no error in this. These questions, as to appellee, were in no way a proper cross-examination upon anything drawn out in the examination in chief. It is urged in argument, also, that the trial court erred in sustaining objections to questions by appellant's counsel to the witness Shields, on cross-examination. Here, as in the case with the witness Beymer, the questions were not within the limit of a proper cross-examination, and were, therefore, properly ruled out. We have thus followed counsel in their argument of the several points, and have found no error for which the judgment should be reversed.

By proper motions, objections and exceptions, questions

were made below that the verdict is not sustained by sufficient evidence, and that the judgment upon the verdict should have been for appellant, and not for appellee. These questions are not discussed here, and hence must be taken as waived. We, therefore, express no opinion upon them.

The judgment is affirmed, with costs.

Filed April 29, 1885.