Conner *v.* The Citizens Street Railway Company.

No. 11,982.

## CONNER *v.* THE CITIZENS STREET RAILWAY COMPANY.

SPECIAL VERDICT.—*Province of Jury.*—*Practice.*—In framing and returning a special verdict, the whole duty of the jury is discharged when they have found and set forth, in an orderly and intelligible manner, all the principal facts which were proven within the issues submitted to them·

SAME.—*Issue Involving Negligence.*—When, upon an issue involving negligence, the principal or ultimate facts are determined by the jury, it then becomes the function of the court to decide, as a question of law, upon the facts found, whether or not the party to whom negligence is imputed was negligent.

SAME.—In an action for damages, growing out of the alleged negligent conduct of the defendant, a paragraph of the special verdict·which recites " that the conduct of the plaintiff on the occasion of the injury was ordinarily prudent and cautious under the circumstances, and that he did not wholly contribute to said injury by any fault or negligence on his part, but that said injury was caused mostly by the agent of the defendant, driver of said car," contains nothing more than inferences or conclusions, and will·not be regarded as a finding of facts.

NEGLIGENCE.— *When a Question of Law.*—Where the facts are undisputed, or where the jury have agreed upon and returned a special verdict setting forth the principal, contested facts, it is the province of the court to settle the question of negligence as a question of law.

SAME.—*Contributory Negligence.*—*Getting on and off Street Car when in Motion.*—The rules applicable to persons getting on and off cars operated by steam are not to be applied in full force to street railways operated by horse-power. A person having the free use of his faculties and limbs, and having given proper notice of his desire to be taken up, the car having slackened its speed in the usual manner, it is not negligence for him to attempt to get on while it is moving slowly.

SAME.—In an action against a street railway company for personal injuries, alleged to have been occasioned by the negligent conduct of defendant's driver, the facts were that the plaintiff was standing on a crossing, where passengers were usually taken, and signalled an approaching street car, the team attached to which was being driven in a trot; that on receiving the signal the driver slackened the speed of the team, so that when the car reached the plaintiff it was moving slowly; that as the plaintiff was in the act of stepping upon the car the driver struck the team, causing it to start rapidly, thereby suddenly jerking the car, so that the plaintiff was thrown violently to the ground and injured.

*Held,* that the defendant is liable.

From the Marion Superior Court.

*L. Ritter, E. F. Ritter* and *B. W. Ritter,* for appellant.
*F. Winter, W. W. Herod* and *H. C. Allen,* for appellee.

MITCHELL, J.—This was a suit brought by John B. Conner against the Street Railway Company to recover damages for personal injuries sustained by him on account of alleged negligence on the part of the railway company.

The appellant had judgment upon a special verdict at special term. This was reversed on appeal to the general term, and the record is now here with an assignment that the general term erred in reversing the judgment of the special term.

The questions for decision arise on the special verdict returned by the jury.

Summarized, the material facts returned were: That the railway company, on the 7th day of May, 1883, owned and operated a street railway, for the carriage of passengers over certain streets in the city of Indianapolis. That on the day mentioned three of the defendant's cars, by reason of a mule attached to one of them having balked, had become "bunched," or collected together, at a point on its line, so that they had lost their proper time or interval. An officer of the company, who was upon the front car, directed that it, and the car succeeding it, should be driven rapidly, without stopping to receive passengers, so as to regain their proper distance from each other, and that the third, or rear car, should receive such passengers as should present themselves. Pursuant to direction, the three cars started down College avenue. Two of them were driven in a fast trot. The first car passed the point where the plaintiff was standing without slackening its speed. When the second, as we infer from the finding, approached the footway at the crossing where the plaintiff was standing, that being the usual place for receiving passengers, the plaintiff, as the finding recites, " gave notice to the agent, an employee in charge of said car, that he desired to take passage therein as a passenger." That the car was one of the regular vehicles for the carriage of passengers, and

that there was room in the car, so that he could have been carried without inconvenience to himself, the defendant, or to other passengers therein. It is then found that the plaintiff was not "instructed by an officer or agent of the defendant to get upon said car." That as the car came up to where plaintiff stood its speed was slackened from a rapid trot to a walk, and when the rear step came about over the walk it was moving slowly. That it was the defendant's custom to slacken the speed of its cars to let men passengers on or off while in motion, as the plaintiff well knew. That the plaintiff attempted to enter the car by the rear door, and stepped one foot on the step, and partially took hold of the iron railing with one hand, when the driver struck the mules with his whip, suddenly increasing the speed of the car, which caused plaintiff to be violently thrown on the ground, from which he sustained severe injuries and bruises. The conclusion of the finding of what purports to be the facts is as follows:

"12th. That the conduct of plaintiff on the occasion of the injury was ordinarily prudent and cautious under the circumstances, and that he did not *wholly* contribute to said injury by any fault or negligence on his part, but that said injury was caused mostly by the agent of the defendant, driver of said car."

In determining the legal value and quality of the facts found, the paragraph above set out is not to be regarded as a finding of facts. It contains nothing more than inferences or conclusions, drawn by the jury upon the precedent facts, and upon these it was not the province of the jury, in their special verdict, either to express opinions or draw conclusions. In framing and returning a special verdict, the whole duty of the jury is discharged when they have found and set forth, in an orderly and intelligible manner, all the principal facts which were proven within the issues submitted to them. *Pittsburgh, etc., R.R. Co.* v. *Spencer,* 98 Ind. 186 ; *Indianapolis, etc., R. W. Co.* v. *Bush,* 101 Ind. 582.

"A special verdict is that by which the jury find the facts only, leaving judgment thereon to the court." Section 545, R. S. 1881.

When, upon an issue involving negligence, the principal or ultimate facts are determined by the jury, it then becomes the function of the court to decide, as a question of law upon the facts found, whether or not the party to whom negligence is imputed was negligent.

A civil case can not be conceived of in which it is the province of the jury by special verdict to determine the facts, and also to draw inferences in the nature of legal conclusions upon the facts found. When the jury find and return a special verdict, it must then be considered that the facts in that case are no longer in dispute. They are ascertained and settled by the special verdict. Unless it can be maintained that the inference or conclusion which may be drawn from all the ascertained and undisputed facts is also a fact, it must follow that it is not the province of the jury to draw inferences or state conclusions. It is settled by decisions so numerous that we need not cite the cases, that where the facts are undisputed it is the province of the court to settle the question of negligence as a question of law. This must be so in the nature of things. If it is otherwise, there is a class of cases in which upon the undisputed facts the court is incapable of reaching a conclusion, or of determining whether such facts constitute negligence or not. As in cases where the question is whether, upon an ascertained state of facts, the conclusion of fraud, conversion of goods, payment or probable cause for the institution of a suit may be drawn, so, where the question is whether negligence has intervened when the facts are ascertained by the instrumentality selected for that purpose, the court must determine whether, in law, negligence can be predicated upon the facts ascertained. *Louisville, etc., R. W. Co.* v. *Balch, post,* p. 93.

Concede that in some sense negligence is, as it is some-

times said to be, a mixed question of law and fact, it can not be so after the facts are ascertained. In cases involving negligence, as in all other civil cases, a point must be reached at some time when the facts and the law are to be considered as separate and distinct, when the litigants have the right to invoke the judgment of the court, and require it to determine whether, upon the facts as they are agreed to be, the law declares that negligence intervened. Such a point, we think, is arrived at when the jury have agreed upon and returned to the court in a special verdict the principal, contested facts in issue.

Without entering farther upon ground which has often before been debated over, we are not willing to admit that a case can arise in which the court must stand mute in the presence of undisputed facts, without authority to declare the law.

Eliminating the unauthorized conclusions drawn by the jury, we proceed to the consideration of the facts properly returned in the special verdict. Upon the facts so returned, we think it clearly appears that the defendant was guilty of negligence, and that the plaintiff was without contributory fault.

While the plaintiff stood upon the crossing at the usual place where passengers were taken up, one car passed rapidly, without slackening its speed. Seeing the next approach at a rapid trot, he gave notice to the person in charge that he desired to be taken up. The speed of the car was slackened so that when the rear end came opposite the crossing it was moving slowly. It can not be assumed that the plaintiff had information that the approaching car, one of the regular vehicles on the line, was not to take passengers. Being at the usual place where passengers were taken up, and having given notice to the person in charge of the car that he desired to be taken up, it was the plain duty of the driver, or person in charge, either to afford him reasonable opportunity to enter the car, or to notify the plaintiff, either by continuing the rapid pace, or in some other way, that he would not be taken.

Instead of giving any sign that he would not be taken, the speed of the car was slackened, so that it was moving slowly when he attempted to get on. Having received a signal and slowed up in a manner to invite the plaintiff to get on, it was a clear act of negligence in the driver, or person in charge, not to observe the plaintiff, if he did not observe him, and, while he was getting on the car in a manner in which the defendant usually received such passengers, to cause the car to be "jerked" forward, as the jury found.

Having given notice of his desire to be taken on board the car, and its speed having been slackened so that it was apparently safe under ordinary circumstances, it was not negligence in the plaintiff to attempt to get on while the car was so in motion. He had a right to rely upon the watchfulness and care which it was the duty of the driver to bestow toward persons about to take passage, under the circumstances, and was not bound to anticipate that the car which he was getting upon might be "jerked," forward by an act of the driver, so as to put him in danger. *Chicago City R. W. Co.* v. *Mumford*, 97 Ill. 560.

The rules applicable to persons getting on and off cars operated by steam are not to be applied in all their rigor to street railways operated by horse-power. A person having the free use of his faculties and limbs, and having given proper notice of his desire to be taken up, the car having slackened up in the usual manner, it is not negligence for him to attempt to get on while it is moving slowly. *Murphy* v. *Union R. W. Co.*, 118 Mass. 228; *Wyatt* v. *Citizens R. W. Co.*, 55 Mo. 485; Thomp. Carriers, 443, 444.

The judgment of the general term is reversed, with costs.

Filed Jan. 26, 1886; petition for a rehearing overruled April 14, 1886.