Cook *et al.* *v.* McNaughton.

No. 14,311.

## COOK ET AL. *v.* McNAUGHTON.

VERDICT.—*Special.—Defects in.—Waiver.*—Where a special verdict finds all the facts necessary to support a judgment, but is defective in finding generally as to one issue instead of specially, if the verdict is received without objection, and no motion for a *venire de novo* or a new trial is made, the defect is waived.

PROMISSORY NOTE.—*Consideration.—Special Verdict.*—The defendant executed his promissory note as a part of a private subscription of $30,000 to secure the extension of a line of railroad. It was found impossible to raise said $30,000. The special verdict showed that the defendant agreed that the note should be used to make up a subscription of $7,500; that afterwards it was delivered to a bank under said agreement, and that the defendant acquiesced in such delivery and agreed to pay it, upon the faith of which the other subscribers to the fund acted. The consideration for which the note was executed, namely, the extension of the line of railway, appeared on its face. The extension was made. *Held,* that the note was shown by the special verdict to have been executed for a valid consideration.

From the Elkhart Circuit Court.

*J. M. Vanfleet,* for appellants.

*J. H. Baker* and *F. E. Baker,* for appellee.

COFFEY, J.—This was a suit in the Elkhart Circuit Court by the appellants against the appellee, upon the following promissory note, viz.:

"$300.            ELKHART, IND., Jan. 17th, 1881.

"I promise to pay to the treasurer of the Cincinnati, Wabash and Michigan Railway Company, or order, three hundred dollars, value received, without relief from valuation or appraisement laws, with interest after maturity at 8 per cent. until paid, and attorney fees.

"This note is given in consideration of the construction by said railway company of an extension of its railway from Goshen, Indiana, to connect with the Chicago and Grand Trunk Railway, and is to be paid at the end of thirty days after such extension is so far completed as to admit of the

running of a train of cars over the same from Goshen, Indiana, to said Chicago and Grand Trunk Railway, and upon condition that such extension is so constructed on or before the first day of January, 1883; and is payable on the further condition that the extension is constructed through the city of Elkhart; and upon or near one of the two surveys made through said city in August, 1880, by said company, and upon the condition that said extension shall reach the main embankment of the Elkhart Hydraulic Company, of Elkhart, Indiana, either by the main track, or side track, of said railway company; right of way through said hydraulic company's land being furnished free of cost to said company.

" If the above terms and conditions are observed and performed by said railway company, then this note shall be paid as herein above specified, otherwise the said note shall be void. And provided that said R. R. is built by Edwardsburgh, or Granger station.

"Signed : JOHN McNAUGHTON."

The complaint alleges that the railroad company performed all the conditions of said note on its part, and afterwards sold and endorsed said note to the appellants.

Among other answers filed by the appellee was an answer under oath denying the execution of the note in suit, one under oath denying the endorsement of the note to the appellants, and another averring that said note was executed without any consideration.

Upon issues formed the cause was tried by a jury, who returned the following special verdict :

" John Cook *et al. vs.* John McNaughton. Special Verdict Submitted by Plaintiffs :

"1. We, the jury, find that in order to induce the Cincinnati, Wabash and Michigan Railway Company to build its line from the city of Elkhart to a connection with the Chicago and Grand Trunk Railway Company, certain residents of the said city of Elkhart, including the plaintiffs and defendant, agreed with said railway company to raise and pay to it the sum of

$30,000, if possible so to do, in lieu of taxation of that amount for said purpose, the question having been before the people and voted down; that said residents, including the plaintiffs and defendant, proposed to raise said sum by private subscription; that, to carry out said proposition, the paper sued upon was signed by the defendant and left with one F. W. Miller to be delivered to said company when notes to the amount of $30,000 should be raised and delivered for the same purpose; that after several thousand dollars were so raised, it was found to be impossible to raise said $30,000, and said project was abandoned, and the committee having the matter in charge ordered said notes to be returned to the signers, including the note now sued upon.

" 2. We further find that a number of the citizens of said city then proposed, if possible, to raise the sum of $22,500 by taxation and $7,500 by private subscription for the purpose aforesaid; that the committee having such matter in charge delegated Mr. Maxon, plaintiff herein, to circulate a subscription paper binding those who signed it who had given notes upon the first proposition to raise the $30,000, to pay them on the new proposition to raise $7,500.

" 3. We further find that many of those who had signed notes to be applied on said $30,000 signed said subscription paper, and the aggregate amount so signed was $2,034.60, but said subscription paper was never presented to or signed by the defendant.

" 4. We further find that said Maxon saw defendant McNaughton, who promised to pay his said original note—the note now sued upon—towards said new subscription of $7,-500; that upon the strength of such promise said Maxon went to said F. W. Miller and got the note now sued upon and left it at the First National Bank in said city of Elkhart.

" 5. That afterwards said citizens appointed a committee to see about getting the right of way for said railway company, of which the plaintiffs and defendant were members,

and one E. C. Bickel was employed to negotiate for such right of way ; said Bickel reported to said committee that he could negotiate to better advantage if he had the cash to pay down. A proposition was then made to the committee to try and get those who had subscribed to the fund to pay their notes before they were due, and raise money at once for that purpose ; the chairman of that committee asked the several members present if they would pay their notes then ; he also said to defendant McNaughton, ' Will you pay your note ? ' to which the defendant said, ' I suppose I can borrow the money and pay it.'

" 6. We find that the defendant by such language intended that those present should understand that he would pay said note, and that those present did so understand him, and acted upon such understanding, and paid their notes a short time thereafter.

" 7. We further find that said sum of $22,500 was raised by taxation and paid over to said railway company, as proposed.

" 8. We further find that upon the strength of defendant's promise said committee went to said bank and got the note now sued upon and delivered it to the said Bickel, who was acting as the agent of said committee and also of said railway company, and he presented it to said defendant for payment, which he refused.

" 9. We find that after all the money which was collectible on said other notes and subscription had been collected and paid to said railway company it lacked about $453 of being enough to make up said $7,500, and these plaintiffs and some others raised the balance and paid it over to said railway company, which by its treasurer duly endorsed said note and delivered the same to the plaintiffs' attorney.

" 10. We also find that all the conditions and stipulations contained in said note were fully performed by said railway company at least thirty days before the first day of January,

1883, all of which was well known to the defendant before this action was brought.

" 11. We find that the amount of principal and interest due upon said note, if anything, is $414.

" 11a. We further find that since the note sued upon was endorsed to plaintiffs, they have collected from other subscriptions about $550, but not enough to pay all claims outstanding on account of said subscriptions.

" 12. If upon the foregoing facts the law be with the plaintiffs, then we find for them, and assess their damages at $414.                   .          JOHN A. SMITH, Foreman."

Upon this verdict the court rendered judgment for the appellee, overruling a motion by the appellants for judgment in their favor on said verdict.

The first objection urged by the appellee to this verdict is that it is not sufficient to support a judgment in favor of the appellants, because there is no finding of facts showing the performance of the conditions precedent contained in the note in suit. The argument is that it is not sufficient for the special verdict to follow the language of the complaint, but that it should contain a finding of the facts relating to each condition from which the court could say, as a matter of law, that the payee of the note had complied with the conditions.

A special verdict must contain all such facts as are essential to a recovery. Its office is to state the facts proved, and all beyond that is unauthorized; and a failure to find any fact necessary to a recovery is equivalent to a finding against the party having the burden of the issue. If it contains conclusions of law such conclusions must be disregarded. Recitals of evidence will also be disregarded. Nothing will be taken by intendment. *Stropes* v. *Board, etc.,* 72 Ind. 42; *Kealing* v. *Vansickle,* 74 Ind. 529 ; *Stumph* v. *Bauer,* 76 Ind. 157 ; *Henderson* v. *Dickey,* 76 Ind. 264 ; *Woodfill* v. *Patton,* 76 Ind. 575 ; *Jarvis* v. *Banta,* 83 Ind. 528 ; *Hessong* v. *Pressley,* 86 Ind. 555 ; *Pittsburgh, etc., R. R. Co.* v. *Spencer,* 98

Ind. 186; *Conner* v. *Citizens Street Railway Co.*, 105 Ind. 62; *Louisville, etc., R. W. Co.* v. *Balch*, 105 Ind. 93; *Buchanan* v. *Milligan*, 108 Ind. 433; *Western Union Tel. Co.* v. *Brown*, 108 Ind. 538.

It does not follow from these premises, however, that the verdict before us is too defective, in the respects now under consideration, to authorize a judgment for the appellants. The finding is that the payee of the note in suit fully performed all the conditions and stipulations contained therein.

If it be conceded that the question as to whether the conditions were complied with was a mixed question of law and fact, still the finding necessarily includes all the facts which would be involved in a performance of the conditions. Rejecting so much of the finding as involves the conclusions of law, there still remains a general finding of the facts which constitute a performance. It is true that the facts, instead of being found specially, are found generally; and it is also true, perhaps, that the appellee, had he insisted upon it, would have been entitled to a more specific finding. Had the jury been instructed to return a special verdict, and instead thereof had returned a general verdict for the appellants, which had been received by the court without objection from the appellee, he could not now be heard to say that the court should render judgment in his favor over the general verdict, treating it as a nullity. In such case he would have had the legal right to object to the acceptance of a general verdict and insist upon a new trial, and would have had the right to a special finding of the facts. So, in this case, if the appellee was not satisfied with the general finding of the facts upon the question of performance of the conditions contained in the note in suit, he had the right to object to the verdict in its present condition. Failing to do so, we are constrained to hold that he waived his right to a more specific finding of the facts, and can not be permitted to say now that the court should treat the general finding as a mere

Cook *et al. v.* McNaughton.

nullity.   To hold otherwise would be to adopt a rule which, instead of securing to the parties their legal rights, would, in many cases, defeat the ends of justice.

It is next contended by the appellee that the judgment of the circuit court is right, because the verdict does not find a valid execution of the note in suit, and because it is not upheld by any valid consideration.

We can not agree with the appellee in this contention. The special finding shows, as we understand it, that the appellee agreed that the note should be used to make up the $7,500 subscription.   After it was delivered to the bank, under that agreement, he acquiesced in such delivery, and agreed to pay it, upon the faith of which the other subscribers to that fund acted.   The note, upon its face, expresses the consideration for which it was executed, namely : the extension of the line of the Cincinnati, Wabash and Michigan Railway so as to connect with the Chicago and Grand Trunk Railway.   This was done.   It thus appears that the appellee has received the full consideration for which he executed the note in suit.

The case of *Catlett* v. *Trustees, etc.,* 62 Ind. 365, is not in point here, as that was a mere donation made on Sunday, without any subsequent ratification.

In our opinion the verdict before us is sufficient to warrant a judgment in favor of the appellants, and that the court erred in overruling their motion for judgment on said verdict.

Judgment reversed, with directions to sustain the motion of the appellants for judgment in their favor on the special verdict of the jury.

MITCHELL, J., took no part in the decision of this cause.
Filed May 14, 1890.

### ON PETITION FOR A REHEARING.

COFFEY, J.—An earnest petition for a rehearing has been filed in this cause, and an able brief filed by counsel, in which it is insisted that the court erred in holding that the special

finding, set out in the opinion, was sufficient to warrant a judgment in favor of the appellants. It is claimed that the opinion is in conflict with the cases of *Goldsby* v. *Robertson,* 1 Blackf. 247; *Pittsburgh, etc., R. R. Co.* v. *Spencer,* 98 Ind. 186; *Dixon* v. *Duke,* 85 Ind. 434; *Louisville, etc., R. W. Co.* v. *Balch,* 105 Ind. 93; *Conner* v. *Citizens Street R. W. Co.,* 105 Ind. 62; *Pittsburgh, etc., R. W. Co.* v. *Adams,* 105 Ind. 151; *Buchanan* v. *Milligan,* 108 Ind. 433; *Western Union Tel. Co.* v. *Brown,* 108 Ind. 538; *Louisville, etc., R. W. Co.* v. *Flanagan,* 113 Ind. 488; *Louisville, etc., R. W. Co.* v. *Hart,* 119 Ind. 273.

We have given each of these cases a careful consideration, and have reached the conclusion that they do not in any manner conflict with the conclusion heretofore reached in the case at bar.

They each support the conclusion reached by the court in this case in so far as it holds that the verdict under consideration is defective as a special verdict, but none of them lends any support to the contention of the appellee in this case.

It is conceded by the appellants that the verdict, as a special verdict, is defective in finding generally on one of the issues in the cause instead of finding the facts in detail, but the controversy between the parties relates to the remedy for such defect, the appellants contending that unless the appellee seeks, in some legitimate mode, to set aside the verdict, the defect is waived; while the appellee contends that the verdict should be treated as though the general finding on this issue was no finding at all.

It is firmly settled by the cases above cited that where the jury find matters of law only, such finding will be ignored, for in case of a special verdict it is the province of the court to deal with the law, and where the jury undertake to usurp the functions of the court, to the extent they do so their action will be treated as a nullity. But where the jury, acting within their special province, find a fact, though the

fact be imperfectly stated in the verdict, the authorities cited do not support the position that the court will treat the finding of fact as a nullity, and render judgment as if no such fact had been found.

In the case of *Goldsby* v. *Robertson, supra,* this court, of its own motion, ordered the verdict set aside. In the case of *Pittsburgh, etc., R. R. Co.* v. *Spencer, supra,* a *venire de novo* was granted.

In the case of *Louisville, etc., R. W. Co.* v. *Balch, supra,* the jury returned a special verdict into which was injected a general verdict. The appellant in that case objected to the reception of the general verdict, and also moved to strike it out. It also objected to a discharge of the jury until they should render a more perfect special verdict. These objections being overruled, the appellant moved for a *venire de novo,* which was overruled.

In relation to the questions thus raised this court said : " We think that the court clearly erred in refusing to require the jury to perfect their special verdict, and in overruling appellant's motion for a *venire de novo.*"

In some of the cases cited, where a statement in the special verdict consisted of a mere conclusion of law, it was ignored, and in some a new trial was granted, but in none of them was the statement of a fact treated as a nullity because it was imperfectly stated.

In 3 Graham and Waterman New Trials, p. 1418, the discussion of the subject of special verdicts is opened with the following language : "A special verdict which does not find the material facts in detail, can not be supported as such ; it must be set aside, and a new trial awarded."

In this case the special verdict was received without objection. No effort was made to have the jury correct it ; no motion was made for a *venire de novo.* The appellant does not seek a new trial, but seeks to treat a general finding on one issue in the case as a nullity.

He insists that the finding in question is a statement of a

mere conclusion of law, and therein, we think, consists the error in one of the premises from which he draws his conclusion. The doctrine that a general verdict for a plaintiff embraces a finding in his favor of all the material allegations in the complaint is elementary. So we think the general finding for the appellant on one issue embraces all the facts involved in that issue.

The defect in the special verdict under consideration does not consist in a failure to find all the facts necessary to authorize a judgment for the appellant, but it consists in finding the facts as to one issue generally and not specially. As the appellee has not sought to have the verdict set aside for this defect it is our duty to give it force, if that can be done.

"'The court will work the verdict into form and make it serve.' For verdicts are to have a reasonable intendment, and to receive a reasonable construction, and are not to be avoided unless from necessity, originating in doubt of their import, or immateriality of the issue found, or their manifest tendency to work injustice." 1 Graham and Wat. New Trials, 160 ; *Chambers* v. *Butcher,* 82 Ind. 508.

As all the parties are content to permit this verdict to stand in its present condition, and as it is not defective in failing to find any facts necessary to a recovery by the appellants, we think the court should sustain the motion of the appellants for judgment in their favor, and that the petition for a rehearing should be overruled.

Filed June 9, 1891.