The Lake Shore and Michigan Southern Railway Company *v.* Stupak.

No. 14,388.

## THE LAKE SHORE AND MICHIGAN SOUTHERN RAILWAY COMPANY *v.* STUPAK.

MASTER AND SERVANT.—*Engineer and Laborer.*—*Fellow-Servants.*—An engineer of a locomotive engine, used in drawing a train of flat-cars, and a laborer employed in unloading the cars of the stone and materials placed upon them to be distributed along the track, are fellow-servants.

SAME.—*Employment of Servants.*—*Duty of Master.*—*Retention of Careless Servant.*—*Liability.*—The master is bound to employ none but careful servants knowingly, and where he negligently employs a careless or negligent servant, or negligently keeps in his employment a negligent or careless servant after notice of such carelessness or negligence, he is liable to one of his servants injured by the negligence or carelessness of such servant.

SAME.—*Engineer.*—*Reputation of as to Carelessness.*—*Evidence Relating to.*—*Admissibility.*—Evidence of the reputation of the engineer as to carelessness, by whose recklessness in suddenly starting the train on which the plaintiff was at work the plaintiff was alleged to have been injured, was competent, as tending to prove notice or knowledge on the part of the appellant as to the negligent and careless habits of its engineer.

SAME.—*Notice of Engineer's Negligent Habits.*—*Evidence.*—The defendant took the deposition of a witness to prove that the plaintiff had notice of the careless and negligent habits of the engineer prior to the time of the injury. After proving by this witness that on one occasion he heard the plaintiff express the opinion that the engineer, by his recklessness, would kill all the men on the train, the defendant asked the witness this question: " Is that the only time you heard him say anything about it ? " Answer. " I only once heard him ; the other people talked with him."

*Held,* that the words of the answer, " The other people talked with him," were properly stricken out on motion of the plaintiff, there being nothing in the deposition from which the nature of the conversation with the other people could be ascertained.

SAME.—*Special Verdict.*—*Finding Outside the Issues.*—Where there is no allegation in the complaint that the defendant has been negligent in ascertaining the habits of its engineer, or that it has failed to avail itself of the means at its command to ascertain such habits, so much of the special verdict as finds that the defendant had ample means of knowing such habits will be regarded as a finding outside the issues, and will be disregarded by the Supreme Court.

The Lake Shore and Michigan Southern Railway Company *v.* Stupak.

SAME.—*Competency of Servant.— What Master May Assume.—Discharge after Notification of Servant's Carelessness.*—Where a master employs a compe-tent and careful servant, he has the right to rely upon the presumption that he will continue careful and skilful, and when notified that he has become careless he is not ordinarily bound to discharge such servant without an investigation into such charge, unless such notice is accom-panied by such evidence as leaves no reasonable doubt of the truth of the charge.

SAME.—*Negligent Retention of Careless Servant.—Failure of Jury to Find.— Presumption.*—The material charge in a complaint against the defend-ant being that the defendant, with notice of the negligence and careless-ness of its engineer, carelessly and negligently retained him in its serv-ice, it will be presumed, in the absence of a finding by the jury of the existence of this fact, that it was not proven on the trial.

SAME.—*Knowledge of Engineer's Carelessness before Injury —Negligent Re-tention after Such Knowledge.—Finding.*—A finding by the jury that the de-fendant had knowledge of the careless habits of its engineer before the day on which the injury occurred, does not authorize it to be said, as a matter of law, that the defendant negligently retained him in its serv-ice after such knowledge.

SAME.—*Pleading.—Notice of Negligent Habits of Engineer.— Through whom Brought to Defendant.*—A plaintiff is not required to state in his com-plaint the names of the officer or officers of the defendant through whom he expects to bring notice to the defendant of the negligent habits of the engineer in charge of a train upon which the plaintiff was injured.

SUPREME COURT.— *Weight of Evidence.—Reversal of Judgment.*—A judgment will not be disturbed by the Supreme Court on the weight of the evidence.

SPECIAL VERDICT.—*Submission of Draft.*—When the jury is instructed by the court to return a special verdict in a cause, either party, under the supervision of the court, has the right to submit to the jury a draft of a special verdict embracing the facts in the cause which he believes the evidence tends to prove.

SAME.—*Draft Embracing Additional Facts.—Submission of by Adversary.*—In such case if the draft presented should omit some fact which the oppo-site party thinks should be passed upon by the jury, he has the right to submit a draft prepared by himself, embracing such additional fact, but the question can not be raised by objecting to the submission of a draft by his opponent containing matters proper to be submitted.

SAME.—*Inference.*—Nothing can be added to the special verdict by in-ference.

From the Lake Circuit Court.

*J. H. Baker,* for appellant.

*E. D. Crumpacker,* for appellee.

COFFEY, J.—This was an action by the appellee against the appellant for personal injuries. The amended complaint was in a single paragraph, and, omitting the caption, is in the words and figures following:

" The plaintiff, John Stupak, for amended complaint complains of the defendant, the Lake Shore and Michigan Southern Railway Company, and says that said defendant was, at the time of the commission of the grievances and happening of the injuries hereinafter mentioned, and still is, a railroad corporation, organized and existing under the laws of the State of Indiana, and owning and operating a line of railroad which runs eastward from the city of Chicago, in the State of Illinois, and extends over and across the counties of Lake, Porter and La Porte, in the State of Indiana; that said defendant in the operation of its said railroad has for the last four years run a certain locomotive engine and train of flat-cars for hauling gravel, stone, slag and other material along its said railroad for the purpose of repairing its track ; that, from the 1st day of April, 1883, until the following September, said defendant used said engine and train of flat-cars in hauling gravel, stone and slag from a pit near a station on said railroad in Lake county, Indiana, known as Pine, and distributing the same along said railroad in said Lake and Porter counties, and had employed as laborers on said train, and as track repairers in utilizing and disposing of the material so hauled upon and along the track by said train, a large number of men, to wit, one hundred and thirty, who lived at various points along the line of said railroad between said station of Pine and the city of La Porte, in said State of Indiana; that the agents and servants of said defendant in charge of said train and said work, by direction of said defendant, would leave the flat-cars at the pit at night, and take the said locomotive engine and two cabooses or coaches which the defendant had provided therefor, and convey the said laborers to their respective places of abode, and in the same manner convey them to their places of work

The Lake Shore and Michigan Southern Railway Company v. Stupak.

every morning; that about thirty of said laborers were engaged during said time in raising and repairing the track, and the others, numbering about one hundred, worked on said train of flat-cars, loading the same with gravel and other materials at said pit, and riding on said train along the track for the purpose of unloading said material; that it was the duty of said body of track repairers under their employment, when called upon so to do by their foreman, to go upon said train and assist in unloading the same; that said defendant had in its service and employment on the 13th day of August, 1883, and for four months prior thereto, as engineer of the locomotive engine used to propel said train of cars upon said work as aforesaid, one Walter Pool, who was habitually careless and negligent in the discharge of his duties as such engineer in running and operating said engine and hauling said train of flat-cars during all of said time, in this, that during said time said engineer habitually and generally run and propelled said engine and train of flat-cars at a high, unusual and dangerous rate of speed, and habitually· and generally, carelessly and negligently started and stopped said engine and train of cars during said time with great, unusual and dangerous suddenness, and habitually and generally during all of said time, carelessly and negligently stopped and started said train of flat-cars with great danger, without giving any signal or warning thereof whatever, and while laborers were engaged in unloading said train of flat-cars, and was not possessed of sufficient skill to manage and operate said locomotive engine and train of flat-cars in an ordinarily careful and prudent manner, of all of which said defendant had due notice long before said 13th day of August as aforesaid, but carelessly and negligently retained said Pool in its service and employment as such engineer after such notice, and until the happening of the injuries hereinafter mentioned; that on or about the 25th day of July, 1883, the plaintiff entered into the service of said defendant as one of its track repairers on the work hereinbefore mentioned, and

he lived near Burdick Station, along the line of said railroad in said Porter county, and rode back and forth from his home to his place of work in one of the cabooses or coaches attached to said locomotive engine, and provided by the defendant for the purpose of conveying laborers to and from their places of work as aforesaid ; that at the time he engaged in the service of the defendant as aforesaid he was wholly unacquainted with said Pool, and had no notice or knowledge whatever of his careless and negligent habits and lack of skill as an engineer as aforesaid, or of his character or reputation as an engineer, or in any other capacity ; that plaintiff continued in the service of the defendant as aforesaid, and on the 13th day of August, 1883, he was ordered and directed by his foreman to go upon said train of flat-cars and assist in unloading the same ; that said train was then standing still, with the locomotive engine attached thereto, under the control and management of said Pool, when plaintiff, pursuant to said direction from his foreman as aforesaid, and as it was his duty to do, went upon said train of cars, and while standing on one of said cars shovelling off material in the line of his duty as such servant of said defendant, and without any fault and negligence upon his part, said Pool carelessly and negligently, and without giving any signal or warning whatever, suddenly put said engine and train of cars in rapid motion, whereby the plaintiff was thrown off his feet, and fell between two of said cars, and was run over and cut, bruised and mangled, and had his arms crushed and broken, so that he was permanently disabled and wholly and permanently lost the use of both his arms, and was by such injuries rendered sick and sore, and for a long time his life was despaired of ; that he suffered great bodily and mental pain and distress from his said injuries, and expended a large sum, to wit, four hundred dollars, for medical services and nursing in attempting to cure himself thereof; that he was, at the time of receiving said injuries, in the enjoyment of good health, and was earning one thousand dollars per year,

but on account thereof has not been able to do any kind of labor since, and is unable even to feed himself, or attend to his personal wants, and will remain permanently in such helpless condition, all to his damage of twenty thousand dollars. Plaintiff further says that at the time he went upon the train of cars to assist in unloading the same, on the 13th day of August, 1883, as aforesaid, he had never been on said train of flat-cars but once before, and then for a few minutes only, and he had no notice or knowledge whatever of the careless and negligent habits of said Pool in handling and running said engine and train of cars, and had no notice or knowledge whatever of the character or reputation of said Pool as such engineer, or in any other capacity; that said injury occurred wholly without the fault or negligence of plaintiff, but was caused by the carelessness and negligence, and want of skill of said Pool in managing said engine and train of cars as aforesaid, and by the negligence and carelessness of the defendant in retaining said Pool in its service as such engineer, after it had notice of his carelessness, negligence and incompetency as aforesaid. Wherefore plaintiff asks judgment for twenty thousand dollars, and other proper relief."

The defendant filed a motion in writing, asking the court to require the plaintiff to make his amended complaint more certain and specific by stating the name or names of all officers and agents of defendant through whom he expected to bring notice to the defendant, or if the plaintiff showed that he could not ascertain and state the name or names of such officers and agents, that he be required to state what official position such officer or agent held and in what manner he was employed. The court overruled the motion, to which ruling the defendant excepted.

The defendant demurred to the amended complaint for want of facts. The court overruled the demurrer, to which ruling the defendant excepted.

The defendant answered in four paragraphs. The first

was a general denial; and the others set up special matter. The paragraphs setting up special matter need not be further noticed, as the case was tried upon the issues raised by the general denial.

There was a reply in denial to the second, third and fourth paragraphs of answer.

The trial was by jury. Under instructions of the court they returned a special verdict, which, omitting the caption, is as follows:

" We, the jury, having been instructed to return a special verdict in said cause, find the facts proven as follows:

" 1st. The defendant, the Lake Shore and Michigan Southern Railway Company, is, and for the last ten years has been, all the time, a railroad corporation duly organized and existing under and by virtue of the laws of the State of Indiana, and during all of said time said defendant has owned and operated a line of railroad running and extending to the eastward from the city of Chicago, in the State of Illinois, and running and extending through and across the counties of Lake, Porter and La Porte, in the State of Indiana.

" 2d. On the 13th day of August, 1883, and for three months next before that date, the defendant run and operated upon its said railroad a certain locomotive engine and train of flat cars which were at and during all of said time used by said defendant in hauling and distributing stone and other material along the line of said railroad through Lake, Porter and La Porte counties, in said State of Indiana, and which stone and material were during said time being used by said defendant in raising and repairing its said railroad track; that said defendant had in its service and employment during said time a large number of laborers, to wit: About sixty (60), who worked under the foremanship and direction of John Shifkoski, who was also in the service and employment of the defendant during said time; that said laborers were, during said time, employed in unloading said train of flat cars of such stone and material, while the same was being

The Lake Shore and Michigan Southern Railway Company *v.* Stupak.

distributed along the track aforesaid, and such laborers were required to go and be upon said flat cars to perform such service; that during said time the defendant had in its service and employment also a number of other laborers, to wit: About twenty (20), who were engaged in using said stone and material in raising and repairing the defendant's said railroad track, which last-named laborers worked under the foremanship and direction of John Pickett, who was also in the service and employment of the defendant during said time; that said laborers working under Shifkoski and Pickett as aforesaid, lived at various places along the line of said railroad between the city of La Porte, in La Porte county, and Pine Station, in Lake county, and when each day's work was done, the servants of said defendant in charge of said locomotive engine and train of cars, under instructions from the defendant, would leave the flat cars at or near the place of work and carry and convey said laborers to their respective places of abode in two coaches or cabooses provided by the defendant for that purpose, and which were drawn and propelled by said locomotive engine used in running said train of flat cars, and by such means would convey them to their places of work every morning, said engine and coaches remaining at the city of La Porte of nights.

"3rd. That said defendant had in its service and employment, on the 13th day of August, 1883, and for six weeks next before that date, continuously, one Walter Pool, as engineer of said locomotive engine used in drawing and propelling said train of flat cars and cabooses as aforesaid, who then and there, during all of said time, had the charge, control, and management of said locomotive engine; that it was the duty of said Pool, as such engineer, to start and stop said train of flat cars carefully, and to give, or cause to be given, signals of warning, either by sounding the whistle or ringing the bell upon his said locomotive engine before starting said engine and train of flat cars in motion, but during all of said time said Pool was in the habit of starting said loco-

motive engine and train of flat cars, while engaged in said work, with unnecessary and dangerously sudden jerks, and without giving, or causing to be given, any signal or warning either by sounding the whistle, ringing the bell, or in any other manner, and said Pool, during all of said time, was in the habit of starting said engine and train of flat cars while hauling and distributing stone and material upon and along the defendant's railroad as aforesaid, and while men were on said flat cars engaged in unloading the same, with unnecessary suddenness, and without giving, or causing to be given, any kind of signal or warning, and was so in the habit of starting said locomotive engine and train of flat cars on the 13th day of August, 1883, and all the time for six weeks next before that date; that it was dangerous to the men working on and about said train to so start the same without giving, or causing to be given, any signal or warning, or to start the same with such suddenness.

"4th. That said Walter Pool, during all of said time, had sufficient skill and knowledge to properly discharge his duties as such engineer, but during all of said time he habitually failed and neglected to discharge such duties with that degree of care and caution which a man of ordinary care and prudence would have done under the same, or similar, circumstances; that during all of said time, to wit: On the 13th day of August, 1883, and for six weeks next before that date, said Walter Pool was generally reputed and known to be habitually careless and reckless in the discharge of his duties as such engineer, generally along the line of the defendant's said railroad, by and among the men who worked under the foremanship and direction of the said John Shifkoski as aforesaid; that the defendant had sufficient and ample means of knowing the habit and conduct of said Pool as such engineer in discharge of his duties as aforesaid before the 13th day of August, 1883, and we find that the defendant did have such knowledge before that date. We also find that at the time said Pool entered into the service

of the defendant as an engineer, to wit: In the year 1880, he was a reasonably careful, skilful, and competent engineer.

" 5th.   That on the 29th day of June, 1883, plaintiff was employed as a track repairer by the defendant, and entered into its service, on its said railroad, in using the stone and material distributed along the defendant's railroad, as aforesaid, and continued in such service as such laborer until the 13th day of August, 1883; working all of said time under the foremanship and direction of said John Pickett, except for four days at the commencement of his said service, when he worked under the said John Shifkoski at breaking and crushing stone; that during all of said time plaintiff lived in the country, about one and a half miles from Burdick station on said railroad, in said Porter county, and he got on and off the caboose train of the defendant as aforesaid in going to and returning from his work at said Burdick Station; that by the terms of his employment it was the duty of the plaintiff to go upon and assist in unloading said train of flat cars whenever his foreman directed him so to do.

" 6th.   That at the time plaintiff entered into the service of the defendant as aforesaid, he had no knowledge whatever of the character of said Walter Pool as an engineer, or in any other capacity, or of his reputation as an engineer, or of his habits and conduct in the discharge of his duties as such engineer; that said plaintiff was engaged at said work of raising the track of the defendant's said railroad during its said service, and was not required to and did not go upon said flat cars to assist in unloading the same or for any other purpose until the 13th day of August, 1883; that the plaintiff was engaged with the force of track repairers as aforesaid and did not meet, or come in contact, with any other servants of said defendant, except for about thirty minutes each morning and evening in riding to and from his place of work, in one of the cabooses, or coaches, as aforesaid; that

during plaintiff's entire service he had no knowledge whatever, from any source, of the reputation, or character, of said Walter Pool as an engineer, or his manner and habits of starting said locomotive engine and train of flat cars, and had at no time, during his said service for the defendant, any means of such knowledge.

"7th. That on the 13th day of August, 1883, while so in the service of the defendant, plaintiff was directed by his foreman to go upon said train of flat cars to assist in unloading the same, and under such direction plaintiff went upon said train and assisted in unloading the same, and while plaintiff was upon one of said flat cars, engaged in the line of his duty, and immediately after said car was unloaded, and before plaintiff could, or had time to secure a position of safety, said Pool, as such engineer, without giving, or causing to be given, any signal or warning, by ringing the bell or blowing the whistle, or in any other manner, started said locomotive engine and train of flat cars in motion with great and unusual suddenness, and plaintiff was thereby thrown down on the railroad track and run over by one of said cars, and his arms were cut, crushed, and broken, and permanently injured thereby ; that at the time plaintiff went upon said car to unload the same, and at the time he was injured, he had no knowledge or intimation whatever of the reputation, character, or habits of said Pool as such engineer, and had no means of such knowledge ; that at the time he was injured, and all the time before, the plaintiff was in the exercise of that degree of care and caution for his own safety that a man of ordinary prudence would have exercised under the same, or similar, circumstances.

"8th. That by reason of such injury plaintiff, although properly treated therefor, was rendered sick and sore and was confined to his bed for one year, during which time he suffered intense physical pain and mental anguish on account of such injuries, and his right arm was thereby rendered wholly and permanently useless, and his left arm was ren-

dered permanently stiff at the elbow joint, and plaintiff was by such injuries rendered wholly and permanently disabled from performing manual labor; that at the time of plaintiff's said injury he was twenty-nine years of age and capable of earning four hundred dollars per year; that he was compelled to and did expend three hundred dollars ($300) in medical treatment for his said injuries; that plaintiff was damaged by such injuries to the amount of eight thousand dollars ($8,000).

" 9th. The foregoing are all the facts proven upon the trial of said cause.

" If upon the foregoing facts, the law is with the plaintiff, we find for the plaintiff and assess his damages at eight thousand dollars ($8,000); but if the law is with the defendant, we find for the defendant.

" JOHN P. MERRILL, Foreman."

Thereupon the defendant filed its motion for a *venire de novo*, assigning twelve reasons therefor. The court overruled this motion and the defendant excepted.

The defendant then filed its motion for a new trial, assigning forty-three reasons therefor. This motion was overruled by the court and the defendant excepted.

The plaintiff moved the court for judgment in his favor on the special verdict.

The defendant orally moved the court to render judgment on said special verdict in its favor. The court overruled the motion of the defendant for judgment on said verdict, to which ruling the defendant excepted.

The court sustained the plaintiff's motion for judgment on the verdict, to which ruling the defendant excepted. And thereupon the court rendered judgment for plaintiff for eight thousand dollars and costs.

The errors assigned are that the circuit court erred:

*First.* In overruling the motion to make the amended complaint more certain.

*Second.* In overruling the demurrer to the amended complaint.

*Third.* In overruling the motion for a *venire de novo.*

*Fourth.* In overruling the motion for a new trial.

*Fifth.* In overruling defendant's motion for judgment on the verdict.

*Sixth.* In sustaining plaintiff's motion for judgment on the verdict.

Under the first assignment of error, it is claimed that the court should have required the appellee to state in his complaint the names of the officer or officers of the appellant through whom he expected to bring notice to the appellant of the negligent habits of the engineer in charge of the train upon which the appellee was injured. We know of no rule of pleading requiring such particularity; and it is evident that no good result would have been attained by sustaining the motion to make the amended complaint more specific. Had the appellee charged in his complaint that each and all of the officers of the defendant had notice of the negligent habits of Pool, the engineer, it would have been sufficiently specific, and yet the appellant would have had no more information as to the nature of the proof to be offered on the trial of the cause, than it had with the complaint in the condition we find it. We do not think the court erred in overruling the motion to make the amended complaint more specific. Nor do we think the court erred in overruling the demurrer to the amended complaint.

It is true that the appellee and Pool, the engineer, were fellow servants, and that ordinarily the master is not liable to his servant for an injury occasioned by the negligence of a fellow servant. *Indiana Car Co.* v. *Parker,* 100 Ind. 181; *Bogard* v. *Louisville, etc., R. W. Co.,* 100 Ind 491; *Robertson* v. *Terre Haute, etc., R. R. Co.,* 78 Ind. 77; *Capper* v. *Louisville, etc., R. W. Co.,* 103 Ind. 305; *Boyce* v. *Fitzpatrick,* 80 Ind. 526; *Brazil, etc., Coal Co.* v. *Cain,* 98 Ind. 282. But it is equally well settled that the master is bound to

employ none but careful servants knowingly, and that where he negligently employs a careless or negligent servant, or negligently keeps in his employment a negligent or careless servant, after notice of such carelessness or negligence, he is liable to one of his servants injured by the negligence or carelessness of such servant. *Indiana Mfg. Co.* v. *Millican,* 87 Ind. 87; *Ohio, etc., R. W. Co.* v. *Collarn,* 73 Ind. 261; *Indianapolis, etc., R. W. Co.* v. *Johnson,* 102 Ind. 352; *Pennsylvania Co.* v. *Roney,* 89 Ind. 453.

It is objected that the complaint does not allege that the appellee did not possess equal means of knowing the negligent habits of the engineer with those possessed by the appellant. But it is expressly alleged that the appellee had no notice or knowledge of the negligent habits or conduct of Pool, and that the appellant did have such notice and knowledge.

The complaint, in our opinion, states a cause of action against the appellant.

Under the fourth assignment of error it is insisted:

*First.* That the evidence in the cause does not tend to support the verdict of the jury.

We have carefully read the evidence, and think it tends to support all the facts found by the jury. We can not disturb the verdict on the weight of the evidence.

The appellee requested the court to require the jury to find a special verdict. With such request he submitted the draft of the special verdict returned by the jury, which appears in the record, with the request that if the jury approved the same they should return it as their verdict.

The appellant, at the proper time, objected to submitting this draft to the jury to be signed and returned by it if adopted and approved, and stated its ground of objection to be that it did not cover all the material facts in issue to be proven in the cause, and especially that it was imperfect and defective, among other things, because it was a material fact in issue to find whether during about two months before the

plaintiff was injured he did not daily, morning and evening, ride to and from his work with the other laborers employed on said work on the construction train of which Pool was engineer, and because it was a material fact in issue whether during said time, while said plaintiff was so riding on said train of which Pool was engineer, he (plaintiff) did not see and observe that the engineer started and stopped said train suddenly and with big jerks, and without giving any signal of starting and stopping, and whether plaintiff had not seen men often thrown down by the violent starting of said train, without a signal, and whether said plaintiff did not know of said engineer's negligent habits.

The court, over these objections, submitted said draft of the special verdict to the jury, with instructions that if it approved the same to fill the blank therein with the amount of damages assessed, and sign and return it as their verdict, to which the appellant excepted.

When the jury is instructed by the court to return a special verdict in a cause, we think either party, under the supervision of the court, has the right to submit to the jury a draft of a special verdict embracing the facts in the cause which he believes the evidence tends to prove.

Should the plaintiff submit a draft omitting some fact material to his recovery, that is not a matter of which the defendant has a right to complain, as such omission enures to his benefit.

If a draft presented should omit some fact which the opposite party thinks should be passed upon by the jury, he would doubtless have the right to submit a draft prepared by himself embracing such additional fact, but the question could not be raised by objecting to the submission of a draft by his opponent containing matters proper to be submitted. *Louisville, etc., R. W. Co.* v. *Hart*, 119 Ind. 273.

In this case, however, it is to be observed that all the material facts embraced in the objection were in fact included in the draft of the special verdict submitted. The facts em-

braced in the objection, and not contained in the draft of the special verdict, were merely evidential facts not proper to enter into a verdict.

The court did not err in overruling this objection.

It is contended, *secondly*, that the court erred in refusing to give to the jury certain instructions asked by the appellant.

The appellant tendered to the court at the proper time twenty instructions, all of which were refused. They are quite voluminous, covering many pages of legal-cap, and no good purpose would be subserved by setting them out here.

It is sufficient to say that, perhaps, many of them would have been proper and pertinent in a case where the jury was permitted to return a general verdict; but were wholly inapplicable in a case like this, where the jury was instructed to return a special verdict. The court gave to the jury all the instructions, we think, necessary to enable it to fully comprehend and pass upon the material facts in issue between the parties, and, in our opinion, there was no available error in refusing to give the instructions asked by the appellant. *Louisville, etc., R. W. Co.* v. *Frawley*, 110 Ind. 18.

The appellant moved the court to suppress questions forty and forty-one, and the answers thereto, of the deposition of Andrew Shifkoski, taken on behalf of the appellee, but the court overruled the objection, and appellant excepted.

The questions and answers to which objection was made were as follows :

"Were you acquainted with Engineer Pool's general reputation all along the line of the Lake Shore and Michigan Southern Railway prior to the time John Stupak was injured, as to carelessness as an engineer?

Ans. " Yes, sir.

" Was it good or bad?

Ans. " Bad."

This evidence, we think, was admissible, as it was one of

the modes by which the appellee might prove notice or knowledge on the part of the appellant as to the negligent and careless habits of its engineer. If his reputation along the line of the appellant's road was notoriously bad as being a careless or negligent employee, the jury was at liberty to infer from that fact that appellant, through that means, obtained notice of his carelessness.

The appellant took the deposition of one Joseph Kusch for the purpose of proving that appellee had notice of the careless and negligent habits of the engineer, Pool, prior to the time the appellee was injured. After proving by this witness that on one occasion he heard the appellee express the opinion that said engineer by his recklessness would kill all the men on the train, the appellant propounded to him this question:

" Is that the only time you heard him say anything about it? Answer. "I only once heard him. The other people talked with him."

The court, on motion of the appellee, struck out from said answer the words: " The other people talked with him," and the appellant excepted. It is now claimed that this ruling of the court was error, for which the judgment should be reversed.

We do not think the court erred in this ruling. There is nothing in the deposition from which the nature of the conversation with the other people can be ascertained. When they talked to the appellee the subject of the conversation may have been entirely foreign to the matter under investigation in this case. If the appellant claimed that such talk related to the recklessness of the engineer in the management of his engine, it should have made that fact appear by proper questions propounded to its witness.

In our opinion the court did not err in overruling the motion for a new trial.

This brings us to a consideration of the fifth and sixth assignments of error. And they may properly be considered

together, for if the verdict of the jury is sufficient to authorize a judgment for the appellee, the court did not err in overruling the motion of the appellant for judgment in its favor, nor did the court err in sustaining the motion of the appellee for judgment in his favor on said verdict.

The jury expressly found that Walter Pool, the engineer, to whose carelessness the injury of the appellee is attributable, possessed sufficient skill to properly manage his engine. As to whether the verdict of the jury, therefore, authorizes a judgment in favor of the appellee depends upon whether it is sufficiently shown that the appellant, after knowledge of his careless and reckless habits, negligently kept him in its employment.   The averments of the complaint upon this subject are :  " That the defendant had in its service and employment, on the 13th day of August, 1883, and for four months prior thereto, as engineer of the locomotive engine used to propel said train of cars upon said work as aforesaid one Walter Pool, who was habitually careless and negligent in the discharge of his duties as such engineer in running and operating said engine and hauling said train of flat-cars during all of said time, in this : that during said time said engineer habitually and generally run and propelled said engine and train of flat-cars at a high and unusual and dangerous rate of speed, and habitually and generally, carelessly and negligently started and stopped said engine and train of cars, during said time, with great and dangerous suddenness ; and habitually and generally, during all of said time, carelessly and negligently stopped and started said train of flat cars with great danger, without giving any signal or warning thereof whatever, and while laborers were engaged in unloading said train of flat cars ; and was not possessed of sufficient skill to manage and operate said locomotive engine and train of flat cars in an ordinarily careful and prudent manner ; of all of which said defendant had due notice long before said 13th day of August, as aforesaid, but carelessly and negligently retained said Pool in its service and

employment as such engineer, after such notice, and until the happening of the injuries hereinbefore mentioned."

That portion of the verdict relating to the issue thus tendered, is as follows: " That the defendant had sufficient and ample means of knowing the habits and conduct of said Pool, as such engineer in the discharge of his duties as aforesaid, before the 13th day of August, 1883, and we find that the defendant did have such knowledge before that date."

As there is no allegation in the complaint that the appellant had been negligent in ascertaining the habits of Pool, or that it had failed to avail itself of the means at its command to ascertain such habits, so much of the verdict as finds that the appellant had ample means of knowing such habits, must be regarded as a finding outside of the issues, and must be disregarded by this court. *Indianapolis, etc., R. W. Co.* v. *Bush,* 101 Ind. 582; *Pittsburgh, etc., R. R. Co.* v. *Spencer,* 98 Ind. 186; *Conner* v. *Citizens, etc., R. W. Co.,* 105 Ind. 62; *Buchanan* v. *Milligan,* 108 Ind. 433; *Western Union Tel. Co.* v. *Brown,* 108 Ind. 538.

It is to be observed that there is no express finding that the appellant negligently kept Pool in its service after notice of his negligent and careless habits. The court can add nothing to the special verdict by inference, but must deal with it as it is returned by the jury. *Buchanan* v. *Milligan, supra; Western Union Tel. Co.* v. *Brown, supra.*

It is true the jury find that the appellant had knowledge of the negligent habits of Pool, the engineer, but we are not informed as to when such knowledge was acquired by the appellant. It may have been on the 12th day of August, after the close of business hours, the day before the injury to the appellee occurred. It may have been communicated to some officer of the appellant who had no power to discharge Pool.

When a master employs a competent and careful servant, as in this case, he has the right to rely upon the presumption that he will continue careful and skilful, and when notified that he has become careless he is not, ordinarily, bound

to discharge such servant without an investigation into such charge, unless such notice is accompanied by such evidence as leaves no reasonable doubt of the truth of such charge. A rule that would require the master to discharge a servant, careful and competent when employed, without investigation upon a charge of carelessness, would be a harsh one, and would often result in great injustice to employees. *Ohio, etc., R. W. Co.* v. *Collarn, supra*; *Lake Shore, etc., R. W. Co.* v. *Stupak*, 108 Ind. 1; *Indiana, etc., R. W. Co.* v. *Dailey*, 110 Ind. 75; *Chapman* v. *Erie R. W. Co.*, 55 N. Y. 579; *Moss* v. *Pacific Railroad*, 49 Mo. 167; *Blake* v. *Maine Cen. R. R. Co.*, 70 Me. 60; *McDowell* v. *Chesapeake, etc., R. R. Co.*, 5 S. W. Rep. 413; *La Rose* v. *Logansport Nat'l Bank*, 102 Ind. 332.

The material charge against the appellant, and without which the complaint would be bad, is that the appellant, with notice of the negligence and carelessness of Pool, the engineer, carelessly and negligently retained him in its service.

The jury did not find this fact to exist, and we must, therefore, presume that it was not proven on the trial of the cause. In the absence of such a finding the verdict does not authorize a judgment in favor of the appellee. It is true the jury found that the appellant had knowledge of the careless habits of Pool before the day on which the injury occurred, but this does not authorize us to say, as a matter of law, that it negligently retained him in its service after such knowledge.

Doubtless it was the duty of the appellant to discharge Pool without any unnecessary delay, after acquiring such knowledge, but the jury did not find that it failed to do so. Did it appear from the verdict that the appellant was guilty of unnecessary delay in discharging Pool, after knowledge of his negligent habits, then we could say, as a matter of law, that it had been negligent.

It follows, that the circuit court erred in sustaining the motion of the appellee for judgment in his favor on the special verdict of the jury.

Judgment reversed, with instructions to the circuit court to overrule the motion of the appellee for judgment in his favor on the verdict, and to sustain the motion of the appellant for a *venire de novo.*

Filed January 7, 1890; petition for a rehearing overruled April 8, 1890.