Bowlus v. The Phenix Insurance Company.

16,041.

## BOWLUS v. THE PHENIX INSURANCE COMPANY.

INSURANCE.—*Existing Incumbrance on Property Insured.*—*True Representation by the Assured.*—*False Entry in Application by Company's Agent.*—*Recovery not Precluded.*—Where there is a provision in an insurance policy against an incumbrance of the property insured, and the assured represented the property to be unincumbered, when in fact it was incumbered, such incumbrance will be fatal to a recovery in case of a loss of the insured property; but where the assured truthfully answered that the property was incumbered, and the agent of the insurance company, who undertook to fill out the blank application for insurance, stated that there was no incumbrance, the company will be held to have taken the risk with knowledge of the incumbrance, and the assured, in case of loss, will not be precluded from a recovery because of such incumbrance.

SAME.—*Executing New Evidence of Incumbrance for Old.*—*Effect on Policy.*—Where an assured executed new notes and a mortgage to secure the payment of a pre-existing debt and lien upon the insured property, there is not a new and additional incumbrance upon the property such as will avoid the policy; for there is no increase of risk by the change of indebtedness.

SAME.—*Over-Valuation by Assured.*—*Effect on Policy.*—In the absence of allegations of fraud, an answer alleging that the assured made an overvaluation of his property, and thus forfeited his policy, is insufficient, unless there is an over-valuation so gross as to authorize the inference, taken in connection with other circumstances, of an intent to mislead.

SAME.—*Application for.*—*Agent Authorized to Take.*—*False Entry in Application by Agent.*—*True Statement by Assured.*—*Effect.*—An agent authorized to receive applications represents the insurance company, and if he receives truthful information from the assured, and undertakes to correctly fill the application, but, instead of doing so, inserts false statements, the assured will not be made to suffer because of the wrongful act of the agent.

SAME. — *Policy.*—*Subsequent Incumbrance in Violation of.* — *Effect.* — If, in an insurance policy, there is a warranty against subsequent incumbrances, the policy will, as a general rule, be vitiated, if a subsequent incumbrance is created.

SAME.—*Incumbrance.*—*Mistake in Computation of.*—*Effect on Policy.*—Where an assured, in computing the amount of incumbrance due on his insured property, makes a mistake as to the amount due, and executes a renewal of the incumbrance for a greater amount than is actually due, by reason

Bowlus *v.* The Phenix Insurance Company.

of the mistake in computation, there is in reality no increase of incumbrance, and the policy will not be thereby avoided.

SAME.—*Contract of.*—*Notice of Loss.*—*When Waived.*—The principle, that where a contract is repudiated, or where a party denies liability under it, the performance of stipulations requiring notice, demand, or the like, are waived, fully applies to contracts of insurance.

SAME.—*Pleading.*—*Answer.*—*Confession and Avoidance.*—*When Available.*— When the answer confesses the allegations concerning the filling up of the application, and the statement of the applicant to the agent of the company, the answer is bad unless it effectively avoids such allegations, which are material and relate to a vital point.

PLEADING.—*Complaint.*—*Anticipating a Defense.*—*When Proper and Necessary.*—While a party is not bound, as a rule, to anticipate a defense, yet it is often proper and highly necessary for him to do so; and if such anticipation fails to avoid the defense, the complaint will be bad.

PRACTICE.—*Failure to Fully State Facts Essential to a Recovery in a Special Finding.*—*Effect on Prior Erroneous Rulings.*—Where there are palpable and influential errors, as in rulings upon demurrers, the mere failure in the special finding, to fully state facts essential to a recovery, does not avoid the effect of prior erroneous rulings.

SAME. — *Overruling Demurrer to Bad Answer.* — *When Error.* — *When Harmless.*—Where a demurrer is overruled to an answer which is plainly bad, there is unquestionably error which will reverse the judgment, unless it clearly appears from the record proper that no harm was done the plaintiff.

FORFEITURE.—*Not Favored by Courts.*—*Not Aided by Intendments.*—Courts are reluctant to grant forfeitures, except in very clear cases, and intendments can not be taken in favor of the party asking the forfeiture.

From the Tippecanoe Circuit Court.

*W. L. Rabourn, A. Rice* and *W. S. Potter,* for appellant.

*J. McCabe* and *E. F. McCabe,* for appellee.

ELLIOTT, J.—The complaint of the appellant is based on a policy of insurance issued to him by the appellee. The policy is incorporated into the complaint by reference, and the usual allegations of loss, proof of loss, and the like, are made in a general averment of performance. In addition to such allegations, the complaint contains, in substance, the following averments: that William P. Ermy, the agent of the defendant, proposed to write a policy upon the plaintiff's property; that he presented a printed

application, furnished to him by his principal, which contained many questions; these questions the agent requested the plaintiff to answer, but the plaintiff, being unable to do so because of pressing business, the agent undertook to write the answers in the application; that the plaintiff gave the agent truthful answers to all questions; that one of the questions required the plaintiff to state whether the property was incumbered in any way, and the plaintiff truthfully answered the question by saying; "Yes, by a mortgage to Messmer for about seven hundred and fifty dollars, past due, with four or five years' interest unpaid;" that the agent did not correctly write the plaintiff's answer, but falsely wrote the answer "No" to the question. It is also averred that the mortgage incumbrance did exist against the property, as the defendant knew; that the mortgage was executed to Samuel F. Messmer, since deceased; that, after the mortgagee's death, the mortgage was distributed to his daughter, Elizabeth Messmer; that, after its distribution to her, the mortgage was renewed, but no new or additional incumbrance was created; that, before the renewal, the plaintiff employed a reputable attorney to cast up the interest due on the debt and, especially, to see that no greater sum than that actually due should enter into the new mortgage; that the mistake was made which caused the renewal mortgage to be given for one hundred and forty-one dollars more than the sum actually due; that this mistake was not discovered until suit to foreclose was brought by the mortgagee, and that, on foreclosure, the mistake was corrected. The defendant's answer to the complaint contains many paragraphs. The first paragraph of the answer avers the execution of the mortgage to Samuel F. Messmer, and that it was a violation of the contract of insurance. The second paragraph also alleges the execution of the mortgage to Messmer; avers that, after his death, it was assigned to his daughter Elizabeth, and that she and the plaintiff en-

tered into a contract for a renewal of the original debt; that this contract was carried into effect by the execution of new notes and a new mortgage, which covered and embraced the principal of the debt with compound interest To each of these paragraphs of answer, the plaintiff unsuccessfully demurred.

If it were not for the allegations of the complaint, which show that the defendant had notice of the mortgage to Messmer, and that the failure to state, in the application, the existence of the incumbrance was due solely to the wrong of the appellee's agent, there would be no doubt as to the sufficiency of the first paragraph of the answer. Where there is a provision clearly avoiding a policy, if the property is represented to be unincumbered, the existence of an incumbrance is fatal to a recovery. *Continental Ins. Co.* v. *Vanlue,* 126 Ind. 410, and cases cited. But this rule can not govern where the assured correctly states to the insurer that there is an incumbrance, and the latter undertakes to embody the statement in the application. According to the allegations of the complaint, the assured truthfully stated to the agent of the insurer the facts, and these the agent agreed to embody in the application, which forms part of the contract of insurance. What the agent did was, in legal contemplation, the act of the principal. *Rogers* v. *Phenix Ins. Co.,* 121 Ind. 570, and authorities cited; *Pickel* v. *Phenix Ins. Co.,* 119 Ind 291; *Phenix Ins. Co.* v. *Allen,* 109 Ind. 273, and cases cited. These allegations are admitted; for the answer, under immediate mention, professes to be a plea in confession and avoidance, and so it must be in substance and effect, or else it is wholly bad, inasmuch as a single paragraph of an answer can not be both a denial and a valid plea in confession and avoidance. *Coble* v. *Eltzroth,* 125 Ind. 429; *Nysewander* v. *Lowman,* 124 Ind. 584; *Petty* v. *Trustees, etc.,* 95 Ind. 278; *State, ex rel.,* v. *Foulkes,* 94 Ind., 493, (498); *Richardson* v. *Snider,* 72 Ind. 425; *Neidefer* v. *Chas-*

*tain,* 71 Ind. 425; *Cronk* v. *Cole,* 10 Ind. 485. As the answer confesses the allegations concerning the filling up of the application, and the statements of the applicant to the appellee's agent, it is bad, unless it effectively avoids them. This it does not do. It does no more than affirm that there was an incumbrance, and this the complaint averred, but stated facts, showing the existence of the incumbrance, and that the failure to state it in the application was attributable solely to the fault of the agent of the insurer. There is, indeed, no attempt to avoid the statements of the complaint upon this point; there is a naked admission of their truth, and nothing more. These statements were material, since they related to a vital point. They were proper. In the case of *Phenix Ins. Co.* v. *Allen, supra,* it was expressly adjudged that such allegations were properly embodied in the complaint, and that ruling is right. It is well settled that while a party is not always bound to anticipate a defense, it is often proper for him to do so. A plaintiff may, in many instances, elect to set forth all the facts, and submit the entire case upon questions of law. Our code system is closely akin to the equity practice, and, as is well known, it was proper, under that practice, to anticipate and avoid a defense. The decided cases recognize the rule that defenses may, in the proper cases, be anticipated, but they declare that where the pleader attempts to anticipate a defense he must effectively avoid it, or his complaint will be bad. *Western Union Tel. Co.* v. *Yopst,* 118 Ind. 248; *Knopf* v. *Morel,* 111 Ind. 570, (572); *Behrley* v. *Behrley,* 93 Ind. 255; *Latta* v. *Miller,* 109 Ind. 302; *Calvo* v. *Davies,* 73 N. Y. 211; *Bracket* v. *Wilkenson,* 13 How. Pr. 102; *Hopkins* v. *Ward,* 67 Barb. 452; *People ex rel.* v. *Knox,* 38 Hun, 236, (240); *Wyrick* v. *Wecks,* 68 Cal. 8, S. C. 8 Pac. Rep. 522; *Winsted Bank* v. *Webb,* 39 N. Y. 325. The case before us is one in which the plaintiff could not, with safety, avoid showing the reason why the application did not correctly

state the facts respecting the incumbrance, since the nature of his cause of action and the provisions of his contract made such a statement necessary, and not merely proper. The statements under immediate consideration, being material and proper, were confessed, and, as they were not avoided, the first paragraph of the answer is bad. *Harris* v. *Knickerbacker*, 5 Wend. 638; *Kane* v. *Bloodgood*, 7 Johns. Ch. 90; *Albany City Bank* v. *Dore*, Walker's Ch. (Mich.) 318; *Stafford* v. *Brown*, 4 Paige 88; *Hawley* v. *Wolverton*, 5 Paige, 522; *Somerville* v. *Stewart*, 48 N. J. Law, 116. It may, with propriety, be added that the answer assumes to respond to the entire complaint, and that if it be conceded—and even so much as that is doubtful—that it effectively answers part only, it is, nevertheless, bad, since it is established law that an answer which assumes to respond to an entire complaint is bad if it answers it only in part.

It is argued by the appellee's counsel that even if it be conceded that there was error in overruling the demurrer to the first paragraph of the answer, it is a harmless one, for the reason that the special verdict entitles the appellee to judgment; and in support of this contention we are referred to the cases of *Martin* v. *Cauble*, 72 Ind. 67; *Butt* v. *Butt*, 118 Ind. 31; *State, ex rel.*, v. *Vogel*, 117 Ind. 188. The first of the cases cited is not in point, for in that case the special finding was held to cure the error, because it showed that the judgment rested on a good paragraph of the complaint. It is possibly true that the cases last cited would require us to hold that if the facts appearing in the record proper clearly entitled the appellee to a judgment, the error in overruling the demurrer might be regarded as harmless; but even this is doubtful, for the question comes to us as one of pleading purely, and probably falls within the rule asserted in *Replogle* v. *American Ins. Co.*, 132 Ind. 360. Here, however, we have a case where the court overruled a demurrer to an answer which

is clearly bad, and we can not say, from the record proper, that the error was harmless. Where a demurrer is overruled to an answer which is plainly bad, there is unquestionably error, and the error must reverse the judgment, unless it clearly appears, from the record proper, that no harm was done the plaintiff. The presumption in such cases is that the court acted throughout the case upon the erroneous theory asserted by the ruling on demurrer, and nothing but a clear and decisive affirmative showing to the contrary—and that by the record proper—will rebut this presumption. This doctrine has been often declared. *Replogle* v. *American Ins. Co.*, *supra*. See authorities cited Elliott's Appellate Procedure, sections 591 (note 1), 667, 668, 669. As we shall presently show, the error is not rendered harmless by the special verdict.

The second paragraph of the answer presents questions very similar to those presented by the first paragraph, and much that has been said is applicable to the questions arising on the former paragraph. The second paragraph, like the first, assumes to answer the entire complaint; but, in fact, leaves unanswered the allegations of the complaint concerning the wrong of the insurer's agent in filling the blanks in the application, as well as those relative to the mistake in computing the amount due on the incumbrance which the assured directed the agent to mention and describe in the application which he undertook to prepare. It may be granted that the answer does show that compound interest was included in the renewal mortgage executed to the daughter of the original mortgagee; but, if this was done by the mistake of the attorney employed to make the computation, as the complaint explicitly avers, and the answer admits, the assured did not forfeit his rights under the policy. We are unwilling to hold that a mistake in computing the amount of an incumbrance in order to secure a renewal will vitiate a policy of insurance. The doctrine that a misstatement

concerning an incumbrance will avoid a policy may be well enough where there is concealment, fraud, or neglect; but it would be an unjust one if extended to a case like this, where the incumbrance was made known to the insurer, and the only reason for insisting upon a forfeiture is that the assured, after due care, was led into a mistake as to the amount actually due, and was thereby induced to execute a renewal mortgage for a sum greater than that rightfully owing the holder of the incumbrance. The mistake in computing the amount simply made it appear that the debt was increased, but, in fact and in law, there was no increase. The debt remained the same; that was unchanged, for the result of the mistake was to cause the evidences of the indebtedness to express the amount incorrectly. If it be true, as averred and impliedly admitted—because not effectively denied—that there was a mistake not attributable to a corrupt purpose or to negligence, it can not be true that the debt was augmented. The weight of authority requires the conclusion that increasing an existing incumbrance avoids the policy, but it certainly does not require the conclusion that where there is an honest and excusable mistake in computing the amount of an incumbrance there is an increase of the debt.

There is some diversity of opinion upon the question whether the discharge of an existing mortgage, and the execution of a new one to a different party is such a violation of the contract as forfeits the rights of the assured under the policy. Affirming that the policy is forfeited in such a case is the decision of *Hankins* v. *Rockford Ins. Co.*, 70 Wis. 1, and denying it is the decision in *Russell* v. *Cedar Rapids Ins. Co.*, 71 Iowa 69. In the latter case it was said: "Was the risk increased or was the defendant's security decreased by the change of the incumbrances? This is a question of fact, and should have been left to the jury." Even if we accept as just a much

stricter test than that proposed in the case from which we have quoted, we should have no difficulty in holding the second paragraph of the answer bad.   Here there was a mere renewal of a mortage ; there was not the creation of a new debt.   The change of the creditor was here made by operation of law, and not by the act of the parties ; for Margaret Messmer became the holder of the mortgage by virtue of the law of descent.   The debt. was unchanged in amount and in character.   The evidence of indebtedness was changed, but not the debt itself.   We can perceive no just ground upon which it can be held .that the renewal of a debt under such circumstances, and a change in the form of the instrument evidencing and securing it, forfeits the policy of insurance.   The character of the lien was not changed, although there was a new instrument. executed.   ·The debt itself remained as it was in the beginning.   In *Powell* v. *City of Madison,* 107 Ind. 106, (114)· it. was said :   " The substitution of new evidences of a· pre-existing debt is not, in any legal or proper sense, the creation of a new indebtedness.   Nor is the funding of interest already due, or the execution of coupons for the payment of interest which will thereafter accrue upon a. pre-existing indebtedness, either the creation of a new debt, or, in legal contemplation, an increase of such preexisting indebtedness."   The same general doctrine was; declared in *Burns* v. *Thayer,* 101 Mass. 426, where it was said :   " We regard the cancellation of the old mortgages. and the substitution of the new as contemporaneous acts.. It was not creating a new incumbrance, but simply changing the form of the old one."   Other cases assert the same· doctrine.   *Pouder* v. *Ritzinger,* 102 Ind. 571 ; *Walters* v. *Walters,* 73 Ind. 425 ; *Packard* v. *Kingman,* 11 Iowa 219·; *Swift* v. *Kraemer,* 13 Cal. 526.   Courts are reluctant, as they ought to be, to enforce forfeitures ; and, in such a case as this, there is no reason for a departure from the general rule ; but, on the other hand, there is strong rea-

son for closely adhering to it. If the assured can not renew a debt and give new evidences of it, he is at the mercy of the insurance company, or else he must take the hazard of losing his property by a forced sale under a decree of foreclosure. Neither reason nor justice requires that he should suffer in that way, for no harm can possibly be done the insurer by a mere change in the evidences of indebtedness, inasmuch as its risk is not increased nor its security diminished. Such a case as this is not within the rule which allows a forfeiture where the assured places an incumbrance upon his property. As the debt is unchanged, the risk of the insurer is not augmented. The reason for the rule that the creation of an incumbrance in violation of the terms of the policy works a forfeiture has been thus stated: "It (the rule) goes upon the theory of an increased risk by reason of incumbrances. If a man may incumber his property to its full value, and then insure it to its full value, it may be easily seen how it may be turned into a source of profit." *Brown* v. *Ins. Co.*, 44 Pa. State, 187. In such a case as the present, where there is no increase of risk by the change in the evidence of indebtedness, the reason of the rule fails, and where the reason fails, so does the rule. We can not escape the conclusion that the second paragraph of the answer is bad, and we so adjudge.

The third paragraph of the answer alleges that the assured, in violation of the terms of his policy, applied for and received another policy of insurance without the consent of the appellee. This is a good answer. *American Ins. Co.* v. *Replogle*, 114 Ind. 1; *Replogle* v. *American Ins. Co.*, *supra*.

The sixth paragraph of the answer alleges "that the policy on which the complaint is based was issued on an application taken by the appellee's local agent, Jesse Pilcher, through his sub-agent, William Ermy, whose authority was limited to taking applications, receiving

premiums and transmitting the same to T. R. Burch at Chicago, Illinois, who had exclusive authority to accept applications and issue policies; that Burch accepted the appellant's application on the faith of the statements it contained, and issued the policy sued on; that the applicant represented and warranted that the property was of the value of twenty-three hundred dollars; that "said barn, in truth and in fact, was not, at the time of making the application, worth more than thirteen hundred dollars, as the plaintiff well knew." This answer is bad. Where no fraud is averred, an answer alleging that the assured made an over-valuation of his property, and thus forfeited his policy, is insufficient. It may be true that an over-valuation so gross as to authorize the inference taken in connection with other circumstances, of an intention to mislead, would avoid the policy; but the answer before us does not make such a case, for nothing more is alleged than that the value was placed at twenty-three hundred dollars, when the applicant knew that it was only thirteen hundred dollars. *Phenix Ins. Co.* v. *Pickel, supra; Pickel* v. *Phenix Ins. Co., supra; Rogers* v. *Phenix Ins. Co., supra.* The reason for the rule is that the question of value is ordinarily one upon which a statement must necessarily be largely a mere matter of opinion, and representations embodying opinions can seldom be regarded as fraudulent. An insurer can not be ignorant of the rule of law upon the subject, nor can he be ignorant of the fact that statements of value are generally nothing more than expressions of opinion, and, hence, he can not be misled to his prejudice.

The seventh paragraph of the answer alleges that the application of the plaintiff was taken by the appellee's agent through his sub-agent Pilcher; that the applicant knew that neither the agent nor the sub-agent had "power or authority to issue policies or make contracts of insurance"; that it was stated and warranted in the applica-

tion that the property was not incumbered; that the statement was not true, and that the property was incumbered by a mortgage executed by the assured to Samuel F. Messmer. This paragraph is subject to the same objections as the first. The averment that the agent had no authority to make contracts of insurance, and that the assured had knowledge of that fact, does not rescue the answer from condemnation. An agent authorized to receive applications, represents the insurance company, and if he receives truthful information from the assured, and undertakes to correctly fill the application, but, instead of doing so, inserts false statements, the assured will not be made to suffer from his wrongful act. *Germania, etc., Ins. Co.* v. *Lunkenheimer,* 127 Ind. 536; *Phenix Ins. Co.* v. *Golden,* 121 Ind. 524; *Commercial Union Assurance Co.* v. *State, ex rel.,* 113 Ind. 331; *Geiss* v. *Franklin Ins. Co.,* 123 Ind. 172; *Indiana Ins. Co.* v. *Hartwell,* 123 Ind. 177; *Phœnix Ins. Co.* v. *Stark,* 120 Ind. 444; *Insurance Co.* v. *Wilkinson,* 13 Wall. 222; *Insurance Co.* v. *Mahone,* 21 Wall. 152. We doubt whether an insurance company can send out an agent to solicit and take applications; and yet so effectively limit his authority that an assured who relies upon his undertaking to correctly fill the blanks in an application shall lose the benefit of a policy issued upon it, solely because of the agent's fraud in embodying false statements in the application which he undertakes to prepare according to the information given him. We can not believe that the law will sanction such limitations. But, however this may be, it is, at all events, quite clear that the mere fact that the agent is not authorized to issue policies does not relieve the company from liability where, as here, the agent is authorized to receive applications; and, with correct information given him, inserts false statements in the application he undertakes to prepare, and there is no limitation upon his authority to fill out the application made known to the assured. It is one thing for an assured to have

knowledge that an agent can not issue a policy, and quite another thing for him to have knowledge that the agent has no authority to prepare or direct the preparation of applications.   We are well satisfied that the seventh paragraph of the answer is bad.

The decisions in the cases of *Phœnix Ins. Co.* v. *Benton,* 87 Ind. 136, and *Continental Ins. Co.* v. *Munn,* 120 Ind. 30, are not in conflict with the cases we have cited, nor are they opposed to the conclusion here reached.   We have already declared if there is an existing incumbrance in a case where there is a warranty against incumbrances, the policy may be avoided, if there is an existing incumbrance; and we now declare that where there is a warranty against subsequent incumbrances, the policy will, as a general rule, be vitiated if a subsequent incumbrance is created; but, as we have shown, the general rule has no application to such a case as the present.   The decisions to which we have referred do no more than assert the general rule, and apply it to cases which it governs.   These decisions do not, by the remotest implication, extend the general rule to such a case as this, nor could they do so without going counter to settled and salutary principles.

It is insisted that the errors in ruling on the demurrers to the answers are rendered harmless, because the special verdict shows that there can be no recovery for the reason that there was no notice of the loss.   The special verdict does not, however, cure the error, even if it be conceded that no notice is shown, for that is a point entirely different from the points to which the bad answers are addressed.   There is a clear and important difference between overruling a demurrer to a bad answer and sustaining a demurrer to a good answer.   In the former case the court holds that to be a valid defense, which, in truth, is no defense at all, and thus establishes a theory (to which it is presumed to adhere), cutting off the plaintiff from his rights. *Messick* v. *Midland, etc., R. W. Co,* 128 Ind. 81; *Scott* v.

*Stetler*, 128 Ind. 385, and cases cited. See, also, authorities cited, Elliott's Appellate Procedure, section 591, n. 1, section 669, n. 1. But we are, by no means, persuaded that the appellee would be entitled to judgment on the special verdict, even if there were no intermediate material errors. The verdict does not show that there was no notice of loss; on the contrary, it states that, "Immediately after the loss by fire the plaintiff mailed the letter to J. T. R. Burch, general agent of defendant at Chicago, Illinois. This letter was sealed, and directed to T. R. Burch, at Chicago, Illinois, and placed in the office at Williamsport, on the 8th day of June, 1885, properly stamped." There is, at least, the imperfect statement of a fact, and it is quite doubtful whether the only remedy of the defendant was not a motion for a *venire de novo*. *Cook* v. *McNaughton*, 128 Ind. 410. But, whatever may be the true rule where there are no grave intermediate errors, we regard it as entirely clear that where there are palpable and influential errors, often repeated, a special verdict, stating facts imperfectly or inadequately, does not render the previous wrong rulings harmless. We might grant that the appellant was not entitled to judgment on the verdict; and, yet, it would not necessarily follow that the appellee was entitled to a judgment, much less that it is entitled to a decision that the verdict cured prior prejudicial errors. We give full and explicit recognition to such cases as *Lake Shore, etc., R. W. Co.* v. *Stupak*, 123 Ind. 210; *Dixon* v. *Duke*, 85 Ind. 434, and similar cases cited by the appellee's counsel, but we deny that they authorize the conclusion that the failure to fully state a fact in a special verdict renders material errors in ruling upon demurrers harmless. It seems clear to us—clear beyond controversy—that where there are palpable and influential errors, the mere failure to fully state facts essential to a recovery does not avoid the effect of prior erroneous rulings. If there had been a statement in the verdict that no notice was given, we should have

a very different case, but there is no such statement, nor anything resembling it; on the contrary, so far as the verdict goes, it tends to show notice.

Facts are stated in the special verdict, which probably authorize the conclusion that there was a waiver of notice. There are cases which go very far toward sustaining the appellant's position that notice and proof of loss were waived. *Ætna Ins. Co.* v. *Shryer*, 85 Ind. 362; *Byrne* v. *Rising Sun Ins. Co.*, 20 Ind. 103; *Harris* v. *Phœnix Ins. Co.*, 35 Conn. 310; *Farmers', etc., Ins. Co.* v. *Moyer*, 97 Pa. State 441; *Farmers', etc., Ins. Co.* v. *Taylor*, 73 Pa. State 342; *Pennsylvania Fire Ins. Co.* v. *Kittle*, 39 Mich. 51. The entire theory of the defense, indeed, implies that notice and proof of loss would have been unavailing, for the insurer repudiates the contract and denies all liability. The elementary principle that where a contract is repudiated, or where a party absolutely denies liability under it, performance of stipulations requiring notice, demand, or the like, are waived, fully applies to contracts of insurance. *Little* v. *Phœnix Ins. Co.*, 123 Mass. 380. We have very much more doubt whether the appellant was not entitled to judgment on the special verdict than upon any of the questions we have hitherto considered; and, hence, we can not accept as correct the appellee's theory that the many errors in ruling on the pleadings were rendered harmless by the verdict.

We have given full consideration to the argument of the appellee's counsel that the facts relating to the waiver are outside of the issues, and to the cases of *Purdue* v. *Noffsinger*, 15 Ind. 386; *Newby* v. *Rogers*, 40 Ind. 9, and *Continental Ins. Co.* v. *Vanlue, supra,* and we are not inclined to dissent from the proposition that facts outside of the issues add no force to the verdict. See authorities cited Elliott's Appellate Procedure, sections 766, 767. But granting, what is doubtful, that the facts relative to a waiver are outside of the issues, still it

can not be concluded that the verdict cures material
and influential errors committed in the rulings on the
pleadings; for, as we have already substantially said, a
special verdict does not cure such errors, unless it af-
firmatively shows, with decisive clearness, that the errors
did no harm.   This, it must be plain to every one, is not
shown by a verdict stating facts outside the issues, since
it must affirmatively appear, in order to heal such errors,
that the merits are wholly with the party who relies upon
a special verdict as obviating the effect of prior influen-
tial errors.   It is not to be forgotten that the insurance
company is here seeking the benefit of a harsh rule, and
insisting that the courts declare a forfeiture, although it
retains the benefit conferred upon it by the contract it
asks the court to declare forfeited.   Courts, as has been
again and again decided, refuse to declare forfeitures ex-
cept in very clear cases, and the verdict before us certainly
does not make a clear case, much less will it justify us in
disregarding such errors as we have pointed out in order
to relieve the insurance company by declaring a forfeit-
ure.   It is our duty to avert a forfeiture if it can be justly
done.  *Franklin, etc., Ins. Co.* v. *Wallace*, 93 Ind. 7; *North-
western, etc., Ins. Co.* v. *Hazelett*, 105 Ind. 212; *Ætna Ins.
Co.* v. *Deming*, 123 Ind. 384.   Here the appellee asks us to
reverse this rule by disregarding material intermediate
errors, and giving it the benefit of all intendments that
ingenuity can suggest, in order to open the way to a dec-
laration of forfeiture.   This we can not do.

We have not, we may add, considered the point made
by the appellant's counsel that a failure to give notice or
to make proof of loss does not, under the contract sued
on, work a forfeiture.

For the errors in ruling on the demurrer to the answers,
the judgment must be and is reversed.

Filed October 27, 1892; motion for a rehearing overruled December 30,
1892.